MOYES SELLERS & HENDRICKS
Cody J. Jess (No. 025066)
Lawrence Palles (No. 020263)
Nicholas J. Walter (No. 036410)
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
cjess@law-msh.com
lpalles@law-msh.com
nwalter@law-msh.com
*Attorneys for Plaintiff Gerald Beougher*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Beougher, | Case No. 2:22-cv-01930-SPL |
| Plaintiff, | **RESPONSE TO DEFENDANT REGENERATIVE MEDICINE INTERNATIONAL, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR, IN THE ALTERNATIVE, MOTION TO TRANSFER** |
| v. | |
| Regenerative Medicine International, LLC, a Florida limited liability company; Regenerative Processing Plant, LLC, a Florida limited liability company; Regener-Eyes, LLC, a Florida limited liability company; C. Randall Harrell and Marissa Harrell, husband and wife, | |
| | *(Oral Argument Requested)* |
| Defendants. | |

Plaintiff Gerald Beougher responds in opposition to Defendant Regenerative Medicine International, LLC's ("RMI") Motion to Dismiss for Lack of Personal Jurisdiction; or, in the Alternative, Motion to Transfer ("New Motion") [Dkt. No. 26]. The New Motion is the latest sortie in RMI's long struggle to avoid liability for its still-undisputed material breach of two contracts with Beougher. First, RMI created a two-year delay by filing bankruptcy following the initiation of this matter. Next, RMI tried – and failed – to obtain dismissal in Arizona Superior Court on the same grounds RMI argues here. And now RMI has removed the case to this Court, hoping to succeed where it failed before.

The Court should reject RMI's effort to relitigate the personal jurisdiction and venue issues. This Court has personal jurisdiction over RMI because:

1. RMI purposefully availed itself of the privilege of doing business with an Arizona resident, Beougher, by contracting with Beougher to perform work in Arizona, obtaining $500,000 from Beougher in Arizona, and benefiting from his work in Arizona.

2. Beougher's claims arise from RMI's activities in Arizona and with Beougher, an Arizona resident.

3. The exercise of jurisdiction over RMI is reasonable, given that it contracted with an Arizona resident to work in Arizona for RMI's benefit.

Judge Fox made three key rulings in denying RMI's original motion to dismiss ("Original Motion"). First, he ruled that "the forum selection clause in this particular contract is a permissive forum selection clause rather than a mandatory clause," and that the mere fact Florida was a convenient forum did not mean it was the **only** forum. *See* Transcript of July 18, 2022 Oral Argument, attached as **Exhibit 1**, at 16:25-17-2; 4-8. Second, Judge Fox ruled that "Defendant has not met its burden of establishing that Arizona is an inconvenient forum." *Id.* at 17:24-25. Third, Judge Fox ruled that there was specific personal jurisdiction over RMI in Arizona:

I do find that the Plaintiff has established personal jurisdiction over the Defendant in Arizona. As to the claims arising out of the contract between the parties, indeed, ***the contract specifically provides that the Plaintiff would perform his duties under the contract primarily from Arizona, so I think there's specific personal jurisdiction over the Defendant*** even if there's not general personal jurisdiction.

*Id.* at 17:12-20 (emphasis added).

Since these issues were fully litigated and adjudicated before the case was removed to this Court, this Court should, in its discretion, treat Judge Fox's rulings as the law of the case and deny RMI's New Motion.

## I.    FACTUAL BACKGROUND

On June 12, 2019, Beougher filed his Complaint in the Maricopa County Superior

MOYES SELLERS &
HENDRICKS

PHOENIX, AZ

00325482 17

- 2 -

Court, asserting claims against RMI for breaching the express and implied terms of the Contractor Agreement and Promissory Note. RMI is a Florida limited liability company with its principal place of business in Pinellas County, Florida. At all relevant times, including when he entered into the Contractor Agreement and Promissory Note, Beougher was a resident of Maricopa County, Arizona. RMI knew Beougher lived in Arizona. *See* Jan. 11, 2023 Second Amended Complaint ¶ 35 ("SAC") [Dkt. No. 24]. Indeed, at the oral argument on the Original Motion, RMI's counsel stated "It's not in dispute at this point, though I reserve the right to contest that later if evidence arises to prove otherwise, that RMI was aware that Mr. Beougher … was in Arizona at the time." Ex. 1 at 14:25-15:5. In the Contractor Agreement, RMI and Beougher agreed that he would perform his duties primarily from his office in Scottsdale, Arizona:

> [Beougher] shall serve in the capacity of Chief Operations Officer (COO) and perform such duties and present such deliverables as agreed upon by the parties, including … **be available as reasonably required through telephone conferences,** ***at his offices in Scottsdale, Arizona*****[.]**

*See* SAC at Ex. 3, § 2(a)(i), Regenerative 000037 (bold in original, italicized emphasis added).

The Contractor Agreement was drafted by RMI and contains the following choice of law and forum selection clause:

> The parties to this Agreement (a) ***consent to*** the personal jurisdiction of the state and federal the personal jurisdiction of the state and federal courts having jurisdiction over Pinellas County, Florida, (b) stipulate that the Circuit Court for Pinellas County, Florida, for a state court proceeding, and the United States District Court for the Middle District of Florida – Tampa Division, for a federal court proceeding, ***are proper and convenient venues*** for every legal proceeding arising out of this Agreement and the Contractor's consultancy with RMI …

*Id.* § 7(b), Regenerative 000041 (emphasis added).

The Promissory Note contains a Florida choice of law provision but contains no forum selection clause. And although the Contractor Agreement states that it "supersedes any previous or contemporaneous agreement, representation, or understanding" between

the parties, such superseding language is limited to agreements containing terms related to Beougher's consultancy with RMI, therefore, does not apply to the Promissory Note. *Id.* § 7(f), Regenerative 000043.

On August 29, 2019, RMI filed the Original Motion based on lack of personal jurisdiction and forum non conveniens. *See* Original Motion attached as **Exhibit 2**. Just two weeks later, on September 12, 2019, RMI filed for bankruptcy protection in the Middle District of Florida. *See* Chapter 7 Bankruptcy Petition attached as **Exhibit 3**. Accordingly, the case, including the Original Motion, was automatically stayed. Eventually, some two years later, the parties stipulated to, and the Bankruptcy Court granted, relief from the stay as concerns this litigation. *See* Oct. 28, 2021 Order Approving Stipulation for Relief from Automatic Stay attached as **Exhibit 4**.

The case then resumed, and the parties completed briefing on the Original Motion. On July 18, 2022, as noted, ***the Superior Court denied the Original Motion***. *See* July 20, 2022 Minute Entry attached as **Exhibit 5**. The Court found there was personal jurisdiction over RMI in Arizona and that venue was proper in Arizona. *See* Ex. 1 at 4-8, 16:1-17:25.

On November 11, 2022, the non-RMI Defendants removed to this Court on diversity grounds. On January 11, 2023, Beougher filed the SAC against RMI, Regenerative Processing Plant, LLC, Regener-Eyes, LLC, and Dr. C. Randall Harrell and Marissa Harrell, the alter egos of those companies. On January 25, 2023, RMI filed the New Motion, parroting the same arguments it made in its failed Original Motion.

## II.     RMI FAILED TO MEET AND CONFER

As a preliminary matter, RMI failed to meet and confer as required by LRCiv 12.1(c). *See generally* New Motion [Dkt. No. 26]. On that basis alone, the New Motion should be denied. *See* LRCiv 12.1(c) ("A motion that does not contain the required certification may be stricken summarily.").

## III.    RMI'S NEW MOTION IS NEARLY IDENTICAL TO THE FAILED ORIGINAL MOTION

RMI's Original Motion is nearly identical to the New Motion. Both motions request that the case be dismissed or, in the alternative, transferred to Florida. *Compare* Original Motion at 1, *with* New Motion at 1. Both motions argue that dismissal is warranted because there is no personal jurisdiction over RMI. *Compare* Original Motion at 6, *with* New Motion at 4. Both motions argue that dismissal or transfer is warranted based on a forum selection clause and because Arizona is an inconvenient forum. *Compare* Original Motion at 2 (arguing that the clause favored dismissal), *with* New Motion at 11 (arguing the clause favored transfer).

## IV.    THIS COURT SHOULD TREAT JUDGE FOX'S ORDER AS THE LAW OF THE CASE

> Where … a state nisi prius court, while having jurisdiction rules on a particular problem in a given case and that case is later moved to a federal court, the federal court should treat the ruling of the state court as the law of that case at least where, as here, there are not compelling reasons for ruling to the contrary.

*Gabriel v. Weltmer*, 266 F.Supp. 664, 665 (D. Ariz. 1967). The law of the case doctrine avoids "[p]erpetual litigation of any issue – jurisdictional or nonjurisdictional," as such "delays, and therefore threatens to deny, justice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988).

As noted, the Superior Court previously rejected all three arguments RMI makes in the New Motion. *See* Ex. 5. First, RMI argued that the parties had agreed on a permissive forum selection clause, but that it mandated the case be adjudicated in Florida. Ex. 1 at 4-8. Judge Fox ruled that "the forum selection clause in this particular contract is a permissive forum selection clause rather than a mandatory clause," and that the mere fact that Florida was a convenient forum did not mean it was the ***only*** forum. *Id.* at 16:25-17:2. Second, RMI argued it would be burdensome to make the Harrells travel to Arizona. *Id.* at 15. Judge Fox

disagreed, finding that "Defendant has not met its burden of establishing that Arizona is an inconvenient forum." *Id.* at 17:24-25. *Third*, RMI argued there was no personal jurisdiction over RMI. *Id.* at 9-10. Judge Fox ruled that there was specific personal jurisdiction over Defendant in Arizona: "***the contract specifically provides that the Plaintiff would perform his duties under the contract primarily from Arizona, so I think there's specific personal jurisdiction over the Defendant***." *Id.* at 17:16-20 (emphasis added).

This Court should not allow RMI another bite at the same apple. Judge Fox completely adjudicated these issues; this Court should treat his ruling as the law of the case.

## V. THE MAJORITY OF THE FACTUAL ALLEGATIONS IN THE SAC ARE UNCONTROVERTED AND THUS TAKEN AS TRUE

"Although the plaintiff cannot simply rest on the allegations in the complaint" when personal jurisdiction is at issue, "uncontroverted allegations are taken as true and conflicts between parties over statements contained in affidavits are to be resolved in favor of the plaintiff." *Biliack v. Paul Revere Life Ins. Co.*, 265 F. Supp. 3d 1003, 1007 (D. Ariz. 2017) (citations omitted); *accord Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022).

Here, the SAC makes numerous factual allegations regarding RMI's contacts with Arizona. RMI submitted the Declaration of Marissa Harrell ("Declaration") in support of the New Motion. *See* New Motion at Ex. A. The Declaration contains eight substantive statements regarding Mrs. Harrell and RMI's residency in Florida, that Mrs. Harrell has never been to Arizona, and that she witnessed Beougher working in Florida. However, RMI has not controverted a single allegation in the SAC, either in the Declaration or in the New Motion. Thus, all allegations regarding RMI's contacts with Arizona ***are uncontroverted and taken as true*** including, but not limited to, the following:

- "Benchmark searched for potential candidates across the United States, including throughout Arizona." SAC ¶ 12.
- "Benchmark sent the RMI Memorandum to Beougher in Arizona." *Id.* ¶ 31.

- "[D]uring the initial discussions between Beougher and Dr. Harrell, Dr. Harrell knew Beougher resided in Arizona." *Id.* ¶ 35.

- "Most of the negotiations and discussions between Beougher and Dr. Harrell occurred over the telephone while Beougher was in Arizona." *Id.* ¶ 36.

- "Many of the telephone calls between Beougher and Dr. Harrell were initiated by Dr. Harrell to Beougher in Arizona." *Id.* ¶ 37.

- "In 2014, Beougher loaned RMI the sum of $500,000, which he wired to the Defendants from his bank account located in Arizona." *Id.* ¶ 52.

- "At the time of the execution of the Contractor Agreement, Defendants knew Beougher resided in Arizona." *Id.* ¶ 58.

- "The parties intended for Beougher to perform much of the work set forth in the Contractor Agreement in Arizona." *Id.* ¶ 60.

- "Pursuant to the Contractor Agreement, Beougher agreed to … be available as reasonably required through telephone conferences, at his offices in Scottsdale, Arizona…" *Id.* ¶ 61.

- "Many of the payments made pursuant to the Contractor Agreement and for interest on the Promissory Note were made by check and mailed to Beougher in Arizona by Dr. Harrell and/or Marissa." *Id.* ¶ 72.

- "For the first several months following execution of the Contractor Agreement, and until the clean room facility was fully operational, Beougher performed more than 50 percent of the work under the Contractor Agreement in Arizona." *Id.* ¶ 73.

- "[A]mong other things, Beougher wrote RMI's entire Standard Operating Procedures book in Arizona and worked on the design of the clean room while in Arizona." *Id.* ¶ 74.

- "Dr. Harrell regularly called Beougher in Arizona to discuss progress and future plans for RMI." *Id.* ¶ 75.

- "Dr. Harrell also emailed Beougher in Arizona regarding their business affairs." *Id.* ¶ 76.

- "Defendants benefited from the work Beougher performed while Beougher was physically present in Arizona." *Id.* ¶ 79.

- "Defendants knew Beougher was physically present in Arizona while performing work for Defendants." *Id.* ¶ 80.

- "Beougher performed a significant amount of work on Regener-Eyes in Arizona, including writing approximately one-half of the patent application for Regener-Eyes." *Id.* ¶ 87.

- "Dr. Harrell called Beougher in Arizona numerous times to discuss various aspects of the Regener-Eyes project." *Id.* ¶88.

- "Dr. Harrell also called Beougher in Arizona and requested that Beougher email the draft Regener-Eyes patent application to Dr. Harrell's patent attorney, which Beougher did." *Id.* ¶ 89.

- "Most, or all, of [the payments RMI owed pursuant to the Promissory Note were] payments were made by check mailed to Beougher in Arizona." *Id.* ¶ 101.
- "Pursuant to the Contractor Agreement's express terms, Beougher was required to be available primarily through telephone conferences at his offices in Scottsdale, Arizona." *Id.* ¶ 163.
- "Defendants benefited from the work Beougher conducted for RMI from his offices in Scottsdale, Arizona." *Id.* ¶ 164.

RMI asserts – without explanation – that these uncontroverted factual allegations are "legal conclusions and conclusory allegations." New Motion at 3. Not so. The SAC shows that, among other things, RMI reached out to Beougher in Arizona, induced Beougher to send RMI $500,000 from Arizona, called Beougher in Arizona to inquire about the progress of his work in Arizona, benefited from Beougher's work in Arizona, and agreed that Beougher would perform work in Arizona. Because RMI failed to controvert those allegations, they are taken as true for the purpose of evaluating the New Motion.

## VI.   THERE IS SPECIFIC PERSONAL JURISDICTION OVER RMI IN ARIZONA[1]

To assert personal jurisdiction over an out-of-state defendant, the Due Process Clause requires individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and quotation marks omitted). "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citations omitted). The United States Supreme Court has emphasized that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (citations and quotation marks omitted).

---

[1] Beougher does not contend there is general jurisdiction over RMI.

Plaintiff need only make a prima facie showing of jurisdictional facts to overcome a motion to dismiss based on personal jurisdiction. *See Fields v. Sedgwick Associated Risks*, 796 F.2d 299, 301 (9th Cir.1986). The Ninth Circuit set forth the following test for analyzing whether a defendant has sufficient contacts with a state to be subject to jurisdiction there:

> (1) The non-resident defendant must purposefully direct his activities or ***consummate some transaction with the forum or resident thereof***; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citations and quotation marks omitted) (emphasis added). Once a plaintiff establishes the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King*, 471 U.S. at 476-78).

### A.    RMI Consummated Two Transactions with Beougher, a Resident of Arizona

The first element of the minimum contacts test requires that the defendant "either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1119 (D. Ariz. 2020) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). Although typically only one of these tests applies – depending on what claim has been brought – when a plaintiff brings both tort and contract claims, as RMI has done, "both tests are at issue." *Picot*, 780 F.3d at 1212.

#### 1.    *Purposeful Availment*

The first test, purposeful availment, is satisfied when a defendant has "performed

some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and quotations omitted). Courts' consideration of the "jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Id.* (citations omitted). Thus, for example, courts consider whether a contract "create[d] any ongoing obligations with [the plaintiff] in [the forum state]." *Id.* Courts also find purposeful availment when a defendant's "business activities reach out beyond one state and create continuing relationships and obligations." *Travelers Health Ass'n v. Commonwealth of Va.*, 339 U.S. 643, 647 (1950).

Here, RMI purposefully availed itself of the privileges of doing business in Arizona by forming an ongoing business relationship with an Arizona resident, Beougher. RMI solicited Beougher in Arizona. SAC ¶¶16, 31-32, 35-37. RMI – through the Harrells – repeatedly solicited Beougher while he was in Arizona for a ***$500,000*** loan, which Beougher eventually wired to RMI from his Arizona bank. *See* Declaration of Gerald Beougher attached as **Exhibit 6**, ¶ 27; SAC ¶ 52. RMI also signed the Contractor Agreement with Beougher, knowing he was an Arizona resident. SAC ¶¶ 37, 58. RMI intended that Beougher would work in Arizona. *Id.* ¶ 60. Indeed, RMI agreed to let Beougher work for RMI in Arizona. *Id.* ¶ 163 ("[p]ursuant to the Contractor Agreement's express terms, Beougher was required to be available primarily through telephone conferences at his offices in Scottsdale, Arizona"); *see also* SAC Ex. 3 at Regenerative 000037 (same). RMI communicated with Beougher in Arizona to discuss the progress of his work. SAC ¶¶ 35-37, 75-76, 80. The Harrells initiated nearly all of these phone calls with Beougher while he was in Arizona. Ex. 6 ¶ 4. Ultimately, RMI benefited from the $500,000 loan sent from Arizona and from Beougher's work in Arizona. SAC ¶¶ 52, 79, 89, 243. Accordingly, RMI purposefully availed itself of the privileges of conducting business in Arizona by reaching

out to Beougher, soliciting funds from Beougher in Arizona, and agreeing to let Beougher work in Arizona.

### 2. *Purposeful Direction – Calder Effects Test*

The second test, purposeful direction, is also known as the *Calder* effects test, and requires that a defendant "(1) commits an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citations and quotations omitted); *see also Calder v. Jones*, 465 U.S. 783 (1984) (same). All three elements of that test are present here.

**a.     RMI committed an intentional act by soliciting Beougher in Arizona, contracting with him to perform work in Arizona, and benefiting from the work that RMI performed in Arizona.**

The first element of the test, an intentional act, is shown when a defendant displays an "intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. Courts have routinely exercised jurisdiction over defendants that committed intentional acts in one state with effects felt in the forum state. *See id.* (citing examples).

Here, RMI committed an intentional act by contracting with Beougher, specifying in the Contractor Agreement that he would be performing work for RMI in Arizona, and sending instructions to Beougher in Arizona about how to perform that work for RMI in Arizona. SAC ¶¶ 60, 163; Ex. 6 ¶¶ 5-9. RMI also committed an intentional act by inducing Beougher to send RMI $500,000 in loan funds from his Arizona bank. SAC ¶ 52; Ex. 6 ¶ 27.

**b.     RMI expressly aimed its efforts at Arizona because RMI knew, when it contracted with Beougher to obtain work from him in Arizona, that he was a resident of Arizona.**

The second element of the test, express aiming, is established when the plaintiff shows that the defendant knew the plaintiff was a resident of the forum state. *Biliack v. Paul*

*Revere Life Ins. Co.*, 265 F. Supp. 3d 1003, 1007 (D. Ariz. 2017) (citations and quotations omitted). In other words, if the defendant's activities that gave rise to the suit "were directed toward someone they knew to be residing in Arizona," this element is met. *Id.* at 1009. This element is also met when the defendant targets the plaintiff. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). Or when the intentional act is part of "a sequence of activities designed to use [the forum state's] markets for the defendant's benefit." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988).

Here, RMI aimed its efforts at Arizona, knowing Beougher was a resident here. RMI knew when the Contractor Agreement was signed that Beougher was a resident of Arizona. SAC ¶ 58. RMI knew, while communicating with Beougher while he was working for RMI, that he was working in Arizona. *Id.* ¶¶ 36-37, 75-76, 80, 88. And "[t]he parties intended for Beougher to perform much of the work set forth in the Contractor Agreement in Arizona." *Id.* ¶ 60. Indeed, "[p]ursuant to the Contractor Agreement's express terms, Beougher was required to be available primarily through telephone conferences at his offices in Scottsdale, Arizona." *Id.* ¶ 163; *see also* SAC Ex. 3 at Regenerative 000037; Ex. 6 ¶ 5.

RMI also specifically targeted Beougher. RMI made numerous representations about RMI's assets and officers to Beougher in an attempt to convince Beougher to work for RMI. *See, e.g.*, SAC ¶¶ 38-40, 48; Ex. 6 ¶ 3. RMI's officers, the Harrells, "offered to hire Beougher as a consultant for RMI." SAC ¶ 43. They "urged Beougher to loan money to RMI, assuring him his money would be safe." *Id.* ¶ 47. They repeatedly called Beougher in Arizona, trying to convince him to loan them $500,000. *See id.* ¶ 75; Ex. 6 ¶ 27.

### c.   Beougher suffered foreseeable harm in Arizona because almost all of the harm he suffered was suffered in Arizona.

The third element of the test, foreseeable harm in the forum state, focuses on where the harm occurred. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002). Here, the harm undisputedly occurred in Arizona. Beougher is a resident of Arizona. SAC ¶ 1. He

worked for RMI in Arizona. *Id.* ¶¶ 73-74, 60-61, 87, 163. Beougher sent RMI $500,000 in loan funds from his Arizona bank. *Id.* ¶ 52. At Dr. Harrell's request, Beougher sent RMI the "draft Regener-Eyes patent application" from Arizona "to Dr. Harrell's patent attorney," a patent that RMI refused to compensate him for. *Id.* ¶¶ 89, 230. RMI also refused to pay Beougher what Beougher was owed in Arizona. *Id.* ¶ 102; Ex. 6 ¶ 23.

Beougher was also harmed in Arizona because he performed numerous tasks (ostensibly)[2] for RMI in Arizona for which he was not paid including, but not limited to:

- Designing the clean room. SAC ¶ 74; Ex. 6 ¶ 7.
- Writing an entire Standard Operating Procedures book in Arizona. *Id.*
- Writing equipment lists. Ex. 6 ¶ 7.
- Researching suppliers, such as finding a syringe manufacturer. *Id.*
- Researching a source for amniotic fluid. *Id.*
- Setting up inventory, such as setting up packaging and ordering supplies for the amniotic pack. *Id.*

While he was in Arizona, the Harrells reached out to Beougher to ask about the status of these and other tasks he was performing on RMI's behalf in Arizona. *Id.* ¶ 9. The Harrells also gave Beougher instructions on how to purchase supplies for RMI while he was in Arizona.

## B.    Beougher's Claims Arise Out of RMI's Forum-Related Activities

The second element of the test for minimum contacts is that "(2) the claim must be one which arises out of or relates to the defendant's forum-related activities." *Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802). This element is established "if the plaintiff would not have been injured but for the defendant's conduct directed at the forum." *Biliack*, 265 F. Supp. 3d at 1007 (citations and quotations omitted); *accord Panavision*, 141

---

[2] As set forth in Beougher's Response to the other Defendants' Motion to Dismiss, all this work was ultimately used by Processing Plant. But Beougher did this work believing it to be for RMI.

F.3d at 1322. Courts have found this element is satisfied when the defendant's conduct "had the effect of injuring [the plaintiff] in [the forum state]" and "[b]ut for [the defendant's] conduct, th[e] injury would not have occurred." *Panavision*, 141 F.3d at 1322.

Here, Beougher's damages all arise from RMI soliciting his services in Arizona, agreeing with him that he would work in Arizona, and obtaining money from him in Arizona. *See*, *e.g.*, SAC ¶¶ 52, 74, 88-89, 230, 238, 243. Beougher, an Arizona resident, lost $500,000 from his Arizona bank account. *Id.* ¶ 52; Ex. 6 ¶ 27. Beougher was only injured because RMI solicited him to fund and work for RMI in Arizona. Ex. 6 ¶¶ 2-4, 25-28. Thus, but for RMI's actions in Arizona, Beougher would not have been injured.

### C.    Exercising Jurisdiction Over RMI in Arizona is Reasonable

#### 1.    *RMI Has the Burden to Show That the Exercise of Jurisdiction in Arizona Would Not Be Reasonable*

The third element of the test for minimum contacts, reasonableness, requires that the Court "ensure that the exercise of jurisdiction is reasonable – that it comports with fair play and substantial justice." *Biliack*, 265 F. Supp. 3d at 1007 (citations and quotations omitted). The burden is on the ***defendant*** to prove that jurisdiction would ***not*** be reasonable: "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)). These reasons must be compelling; a defendant may not avoid jurisdiction by simply asserting that "they and their witnesses must travel to distant fora." *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987) (finding jurisdiction in Arizona).

To show that jurisdiction would not be reasonable, a defendant must discuss various factors:

(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

> 2.   *RMI Has Not Shown Compelling Reasons That Being Subject to Jurisdiction in Arizona Would Be Unreasonable*

RMI has not shown that exercising jurisdiction in Arizona would be unreasonable. The New Motion does not discuss the *Dole* factors. *See generally* New Motion. Indeed, RMI does not mention the third element of the minimum contacts test at all. *See generally id.* On that basis alone, this element is met in Beougher's favor.

> 3.   *The* Dole *Factors Show That Exercise of Jurisdiction in Arizona Would Be Reasonable*

> **a.   RMI injected itself into Arizona's affairs.**

RMI reached out to Beougher, an Arizona resident, solicited him to loan $500,000 to and work for RMI in Arizona, contracted for him to do work in Arizona, and benefited from that loan and the work performed in Arizona. SAC ¶¶ 73-76, 79-80, 87, 243. This factor favors jurisdiction.

> **b.   The burden on RMI to defend itself in Arizona is minimal.**

Given videoconferencing and similar technologies, the burden on RMI is minimal. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). This factor favors jurisdiction.

> **c.   There is no conflict with the sovereignty of Florida.**

RMI has not shown, nor could it, that litigating this case in Arizona would conflict with the sovereignty of Florida. And in any event, this factor is inapplicable here. *See id.* at 1200 (applying the factor when one party is international). This factor favors jurisdiction.

### d. Arizona has an interest in adjudicating a dispute involving one of its citizens.

A forum state has a strong interest in a case when, as in this case, "the plaintiff is a resident" thereof. *Id.* (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075-76 (9th Cir. 1986)). Beougher is a resident of Arizona. SAC ¶ 1. This factor favors jurisdiction.

### e. It is most efficient to finish this case in Arizona, where it began.

This case began in Arizona and has been pending here for three years. *See* Complaint at 1. Beougher still resides here and does not anticipate there will be more than two witnesses from outside Arizona: the Harrells. This factor favors jurisdiction.

### f. Arizona provides the most convenient and effective forum for Beougher to obtain relief.

Beougher has spent years trying to prosecute this case in Arizona, despite RMI's best efforts to hide from the case. And Beougher still is a resident here in Arizona, where he has suffered the harm from RMI's conduct. This factor favors jurisdiction.

### g. Arizona is a reasonable forum

"Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Melcher*, 824 F.2d at 791. Arizona is a reasonable and appropriate forum for this case and RMI has not shown that Arizona is unreasonable. This factor favors jurisdiction.

## VII. THIS MATTER SHOULD NOT BE TRANSFERRED

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). RMI fails to overcome this strong presumption. RMI gives two reasons why this case should be transferred: (1) there is a permissive forum selection clause naming Florida

MOYES SELLERS &
HENDRICKS

PHOENIX, AZ

00325482 17

as an appropriate venue and (2) Arizona is inconvenient for RMI. *See* New Motion at 10-14.

Both these arguments fail. First, a forum selection clause is permissive, not mandatory. *See* Ex. 1 at 4-8 (Judge Fox ruling that "the forum selection clause in this particular contract is a permissive forum selection clause rather than a mandatory clause."). Second, convenience as a factor always leans in the plaintiff's favor. *Piper*, 454 U.W. at 255. It would be just as expensive and inconvenient for Beougher to travel to Florida as it would be for one of the Harrells to travel to Arizona. Moreover, following the COVID-19 pandemic, it has become common for proceedings that formerly would have required in-person attendance, such as depositions, settlement conferences, and trial, to be attended virtually. Accordingly, any expense to out-of-state witnesses and parties to participate in the litigation is likely to be nominal.

## VIII.  CONCLUSION

RMI's New Motion should be denied, and this case should not be transferred from this Court. In the alternative, Beougher should be granted leave to amend to address whatever pleading deficiencies remain in the SAC.

DATED this 17th day of March, 2023.

MOYES SELLERS & HENDRICKS

*/s/ Cody J. Jess*
Cody J. Jess
Lawrence Palles
Nicholas J. Walter
*Attorneys for Plaintiff Gerald Beougher*

# EXHIBIT 1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

GERALD BEOUGHER,                )
                                )
          Plaintiff,            )
                                )
vs.                             )      CASE NO. CV2019-008242
                                )
REGENERATIVE MEDICINE           )
INTERNATIONAL, LLC,             )
                                )
          Defendant.            )
_____ )

Phoenix, Arizona
July 18, 2022
11:01 a.m.

BEFORE THE HONORABLE DEWAIN D. FOX
SUPERIOR COURT JUDGE

TRANSCRIPT:  ORAL ARGUMENT

Transcript prepared by:

VERBATIM REPORTING & TRANSCRIPTION, LLC

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

1

A P P E A R A N C E S

On Behalf of the Plaintiff:

    Brittany M. Gilbertson, Esq.
    Dorsey & Whitney, LLP
    2398 East Camelback Road, Suite 760
    Phoenix, Arizona 85016

On Behalf of the Defendant:

    Jeffrey D. Harris, Esq.
    Jon A. Titus, Esq.
    Titus, Brueckner & Levine, PLC
    8355 East Hartford Drive, Suite 200
    Scottsdale, Arizona 85225-2548

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

2

P R O C E E D I N G S

(Participants appearing virtually via Court Connect)

THE COURT:  This is CV2019-008242, Gerald Beougher versus Regenerative Medicine International, LLC.  I'll take the appearance of the Plaintiff, please?

MS. GILBERTSON:  Good morning, Your Honor.  This is Brittany Gilbertson appearing for Plaintiff, Gerald Beougher.

THE COURT:  Good morning.  And I'll take the appearances for the Defendants.

MR. HARRIS:  Good morning, Your Honor.  This is Jeffrey Harris, and joining me by telephone is John Titus, on behalf of Defendant, Regenerative Medicine International, LLC.

THE COURT:  Good morning.  This is the time set for oral argument on the Defendant's motion to dismiss the complaint, or in the alternative a motion to transfer venue.  I thought it might be helpful for me to give my initial thoughts before I let the parties argue.  I have reviewed all of the motion papers and I tend to agree with the Plaintiff on this, that the -- the contract provision at issue is a permissive, not a mandatory forum selection clause.  So that's my initial inclination, and I'll let you, Mr. Harris, convince me that I ought to reach a different conclusion.  You may proceed.

MR. HARRIS:  Very good, and I appreciate you letting me know that at the start.  So I do agree, Your Honor, that

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

3

this boils down to that simple question of whether Section 7 in the forum selection clause is permissive or mandatory, and I will attempt to convince you it is mandatory.  There's a few reasons for that.  And just at the outset I don't believe there's any meaningful difference.  I'll let Ms. Gilbertson correct me if she feels differently between Arizona and Florida law for purposes of this question.  Florida law does apply so we're going to treat it under Florida law.  But I believe the analysis is relatively the same, and I believe that was conceded in the briefs.

The reason that this is mandatory and not permissive is because it doesn't need to be something that states specific mandatory language; it needs to be language of exclusivity.  As you look at the Section 7, you find extensive language of exclusivity.  Number 2, and I'll go into detail on that in just a moment.  There are multiple subparts of this clause that indicate the intent of the parties was to bind them further than simply consenting to jurisdiction in Pinellas County, Florida, it was to go a step beyond that.

So the first part of this argument is in terms of the language itself, as we zero in on that highlighted portion of Section 7; it's page 4 of the reply brief, it states that, well, the parties to the agreement agree to three things, there's subsections A, B, and C.  First they consent to the personal jurisdiction of state and federal courts in Pinellas

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

4

County, Florida; that's one thing.  Second, they stipulate that the Circuit Court for Pinellas County, Florida is a proper and convenient venue for every legal proceeding arising out of the agreement, and of the contractor's consultancy with RMI.  Third --

THE COURT:  Can I interrupt you for a moment?

MR. HARRIS:  Please do, yes.

THE COURT:  Because it's important to note that you said a proper venue, because that differs from the one case that you primarily rely upon the remedial case where the provision there said the proper forum.  So there's a difference between the a and a the.

MR. HARRIS:  I agree, Your Honor.  There is a difference, and I'm not going to say there's not.  The was held in the remedial case to be ironically enough, the -- the main factor in showing that something was exclusive.  Here it does not state that this county is the exclusive jurisdiction, but what I'll argue is that the language is actually more exclusive in nature because it refers to every, which is something not indicated by the word, the.  So this is the type of thing I love as an English major as zeroing in on adjectives, and adverbs, and these sorts of items.  The article --

THE COURT:  Let me interrupt one moment.  It looks like Mr. Beougher may be trying to join us.  Let me just let

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

5

him in, then I'll let you pick up.  Who just joined us by telephone, please?

THE PLAINTIFF:  Gerry Beougher, B-e-o-u-g-h-e-r.

THE COURT:  Good morning, sir.  This is Judge Fox in the courtroom.  We're in the middle of the argument, so if you want to mute your device you can listen in, and I'll let Mr. Harris proceed.

THE PLAINTIFF:  Okay, thank you.

MR. HARRIS:  Thank you, Your Honor.  So your question related to the article, the.  Here I stated perhaps a little too flippantly the Article A.  It doesn't say the Article A in subsection B.  The exact language is are proper and convenient venues.  So I agree there is a little bit of flex within that specific phrase, but we have to -- under Arizona law or Florida law interpret the entire portion of this contract as one integrated whole.  The next phrase is key, where it states for every legal proceeding arising out of this agreement.  My argument is here is that the word stipulate and the word every connect to form an agreement that is above and beyond consent.

Subsection A, the parties agree that Pinellas County, Florida would be a proper venue.  If that was the only language within Section 7 I agree with you, Your Honor, and I would agree candidly with Plaintiff this would be permissive.  But the parties went above and beyond consenting to that

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

6

county being a proper venue.  The parties then stipulated and obviously Your Honor knows the word stipulated, deals with it every day, but that shows more intent of an agreement, of a contractual agreement than simply a consent to be subject to jurisdiction in a certain field.  Here we argue that the consent, or the stipulation to Pinellas County, Florida for every legal proceeding is language which shows exclusivity because if there's a stipulation above and beyond consent to every legal proceeding within the state of Florida then what would be the purpose of that stipulation if it weren't to be exclusive of other venues or other counties within the country?

THE COURT:  Since you asked that question --

MR. HARRIS:  Yes.

THE COURT:  -- it strikes me that the purpose would be that if the Defendant company, RMI, decided to file a lawsuit against the Plaintiff in Florida, that would preclude the Plaintiff from being able to argue that the Florida jurisdiction was not a convenient forum, and try to move -- or move the lawsuit, you know, here to Arizona where it's more convenient for him.  So that could be a purpose for that stipulation that would still make this a permissive forum selection clause.

MR. HARRIS:  I agree, Your Honor, that that is a -- I think there are two ways, of course, the Court could go,

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

7

which is why we're doing oral argument, but my purpose here is to convince you the other way around because the remedial case that we focused on, it wasn't explicitly mandatory, it didn't state that this is the only, or shall resolve every dispute in this county, it said that it was the proper venue, and from that article, from those three letters, t-h-e, the court held there was exclusive enough language.

Here we have more than those three letters, we have a stipulation to every legal proceeding, and so if we're going to hold that the is a word that shows enough exclusivity to hold that it's mandatory despite the absence of other magic language we typically see such as shall, or only; here following that same reasoning I believe that Your Honor has even more ground, or basis for staying that.  So first of all, Your Honor, I think that point is made pretty clearly in the briefs, and -- and I'm happy to answer any other questions you may have about it, but I don't want to beat a dead horse.  I think that's what I have to say on that point.  Would you like me to continue, or did you have other questions?

THE COURT:  I don't have any other questions on that specifically, and maybe you're planning to address this. Let's assume that I disagree with your interpretation.  I indicated that was my initial inclination.  Assuming that you haven't convinced me otherwise, do you agree that the Plaintiff has established personal jurisdiction over the

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

8

Defendant here in Arizona?

MR. HARRIS: Your Honor, I don't. And I think to show a little bit of contrast here I think the venue argument candidly that we have is weaker, but I do think the personal jurisdiction argument is stronger. Here in terms of the personal jurisdiction, you know, and this dovetails a little bit with the sur reply which I'd like to address just briefly. I think that Your Honor can, if there's any discomfort addressing those items in the sur reply, please don't focus on any of that. It was not my intent to raise something in the briefs it's not focused on.

The idea is of course this is a brief filed nearly three years ago due to odd circumstances, not just the pandemic but here the bankruptcy intervening in which no one was supposed to file anything until three years later. But here with that three years having intervened, the issue that was raised three years ago was not only was there a lack of personal jurisdiction but also a venue, and a failure to state a claim all under 12(B)(3)(4), and (6).

So in terms of personal jurisdiction, Your Honor, it's -- it's understood and agreed that we've got Florida agreements, mostly Florida parties, and we don't have to look at the first amended complaint for purposes of this but if you're apt to do so those raise additional Florida entities. Here Mr. Beougher is in Arizona, and I believe, of course,

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

9

it's going to fall to Your Honor what makes sense in terms of the personal jurisdiction here, but this is a Florida agreement interpreting Florida law with, you know, the Defendant being in Florida.  It -- it -- it seems to me that it's quite clear this is a Florida dispute, it should be held in Pinellas County, Florida, especially due to the, what the agreement was made.  But -- and I'd just like to address a little bit in terms of the -- the other items that we saw.  I think, you know, just kind of going back to reading this as a whole, in terms of Section 7, this is a multipoint agreement that's made by the parties.  There was also an indication of intent, that it wouldn't just be for items arising out of the independent contractor agreement, that that would be for anything arising out of the contractor's consultancy with RMI. I believe that alone shows that there was an intent of the parties, if nothing else, to mean that this would be a broadly interpreted section that would raise all disputes in Pinellas County, Florida as opposed to Arizona.  Does that address your question?  Please feel free to let me know if I have, I'm happy to focus more in on it.

THE COURT:  No, I have no other questions.

MR. HARRIS:  Okay.  Your Honor, I -- I believe the other points are -- are made in the briefs but I'll, you know, reserve my time for any other questions.

THE COURT:  Okay.  Let me turn to Ms. Gilbertson and

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

10

allow you to address the issues raised by Mr. Harris.

MS. GILBERTSON:  So, Your Honor, I think you've indicated, you know, your analysis is similar to ours as far as the interpreting the clauses being mandatory.  But I just wanted to -- to note a few points from the reply, that were raised in the reply.  First of all, with respect to the word stipulate, and Defendant's attempts to distinguish stipulate from the word consent.  He didn't cite any case law interpreting stipulation as a word of exclusivity, and I wasn't able to locate any case law making that interpretation. I did, however, find a case out of Texas.

I wasn't able to find anything exactly on point in Florida or Arizona, but there was a case in Texas where the court addresses the exact issue.  The parties had used the word stipulate in a forum selection clause, and I can give you that case citation if you'd like before I quote from it.  So it's Southwest Intelecom, Inc. versus Hotel Networks Corp, and that's 997 S.W.2d 322.  That's a Court of Appeals case in Texas.  And they said, and I quote; we believe the use of the word stipulate also suggests that the parties simply intended to submit to jurisdiction in Minnesota.

The word stipulate means to arrange or settle definitely, and they quoted Black's Law Dictionary there.  By substituting this definition for the words stipulate to in the provision, we believe the parties intent becomes more clear.

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

11

And then they quote from the provision at issue.  It says the parties arrange or settle definitely jurisdiction and venue in Ramsey County, Minnesota, end quote.  So modified, the provision does not provide for exclusive jurisdiction in Ramsey County, Minnesota, instead it merely settles any question of whether the courts of that state have jurisdiction.  So I apologize for the long quote, but in essence the court held there that the word stipulate did not render the clause mandatory, it was still considered permissive.

And aside from that, I mean, that was the main point that was raised in the reply that we did not specifically address in our response, but for the remainder of the reasons we set forth in the response, we believe the forum selection clause is permissive rather than mandatory, meaning that Maricopa County, because the Plaintiff resides in Maricopa County, and RMI, the Defendant, is located in Florida, pursuant to Arizona statute venue is proper in Maricopa County.

We believe that Arizona has personal jurisdiction over Defendant because he entered into a contract with an Arizona resident, and in fact, the contract specifically provides that Mr. Beougher was going to be performing his duties under the contract from his offices in Scottsdale, Arizona, so that parties contemplated that, and agreed and

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

12

consented to Mr. Beougher being in Arizona.  So RMI had a reasonable expectation that should a dispute arise, that he would be brought into court in Arizona, and because the forum selection clause is permissive rather than mandatory, had RMI for example filed litigation as Your Honor indicated, it would prevent Mr. Beougher from challenging Florida courts as being a proper venue but it does not make Florida courts the only place where a case could be filed.

As far as the convenience of the parties, I addressed those issues in the sur reply, and I'll just briefly summarize.  First of all, Defendant hasn't followed the procedural and statutory requirements for challenging venue -- or for transferring venue on convenience grounds.  No answer has been filed, there was no affidavit filed with the request, and Defendant didn't post a bond.

And substantively, even if the Court were to consider it, irrespective of those procedural deficiencies, Defendant hasn't raised any evidence or any facts that would overcome the presumption in favor of having cases decided where the Plaintiff files things such as the number and location of witnesses, the substance of their testimony, the expense of trying the case in Maricopa County, and other factors related to the ends of justice would be promoted by the change.

The claims at issue in the operative complaint are

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

13

two breach of contract claims related to nonpayment.  So the parties with information relevant to those facts would be my client, the Plaintiff, who says that he should be paid under the agreements, and Defendant's representatives, one of the principals who can say why they don't believe payment should be made, or that payment has already been made, whatever the case may be, and that's just two witnesses.  And so it's just as expensive for Mr. Beougher to travel to Florida as it would be for Defendant's representative to travel to Arizona.  And as we all know with COVID-19, today is an example of that.

A lot of things are being done virtual anyway, rendering the cost, travel expenses, you know, aren't really an issue when it comes to considering whether something is convenient or inconvenient for purposes of travel.  So for those reasons I don't believe it would be appropriate to transfer venue either, and I don't believe Defendants raise any issues to personal jurisdiction being exercised in Arizona other than the convenience (indiscernible) and forum selection clause.  So for those reasons we believe that the motion to dismiss should be denied, and the case should be tried in Maricopa County.

THE COURT:  Thank you.  Mr. Harris, I'll give you the last word.

MR. HARRIS:  I appreciate that, Your Honor.  So let me tell you what's not in dispute.  It's not in dispute that

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

14

Mr. Beougher is in Arizona; we understand that.  It's not in dispute at this point, though I reserve the right to contest that later if evidence arises to prove otherwise, that RMI was aware that Mr. Beougher -- Beougher was in Arizona at the time.  However, there's a huge field of other disputed issues at this point, and -- and candidly in terms of a motion to dismiss, it's -- it's not necessarily the Defendant's purpose to put on evidence in a motion to dismiss but rather to raise the threshold issue as a matter of law.

The evidence is on the record that Your Honor can determine in terms of if this were a simple breach of contract with two witnesses, why is the complaint being amended to add potentially four other individuals in Florida, or entities that are all going to be centered out of Florida?  That's one item.  Another item is that while video-conference has made things more convenient, and that's wonderful, that's not necessarily an option that Defendant has to appear via Zoom at trial.  Wherever the trial is the Defendant is going to need to be physically present unless they're attempting to waive that, which they're not going to do.

And so that's going to be a major issue and a major cost.  But I think we go back further, those are items that will arise a little bit more down the line in terms of whether venue should be transferred or not.  In terms of whether there is a claim stated, Defendant maintains that this is an

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

15

agreement that is mandatory in nature.  That the items that were listed in Section 7, it isn't as clean as shall be brought only in this county.  I agree, that's not as open and shut, and that's why we're here.  But in the case law that we've cited in terms of the Florida law it wasn't that open and shut either where we're looking at one article, the word the.  This is much beyond that.  I believe that here in Arizona, I mean, the case stated -- cited by Plaintiff is instructive, it's interesting, but it is out of Texas and isn't binding on anything.

We can find just as much contrary common law, and candidly the practice in Arizona where parties stipulate to facts before trial, they stipulate to scheduling orders, they're then entered.  Those are contracts, those are many contracts that are enforced by the court.  So here, Subsection B did not say the parties consent to Pinellas County, Florida for most proceedings.  What was stated was the parties stipulated to Pinellas County, Florida for every legal proceeding, and not just those arising out of the agreement, but out of the consultancy with RMI which was as broad as we feel like it could be short of the ideal.  And that's why we believe the motion to dismiss should be granted.

THE COURT:  Okay, thank you.  Okay, I'm going to go ahead and make a ruling on the record here.  And I -- I am going to stick with my initial inclination that the forum

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC  07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

16

selection clause in this particular contract is a permissive forum selection clause rather than a mandatory clause.  And certainly the parties did stipulate in the forum selection clause that the state and federal courts in Pinellas County, Florida are proper and convenient forums for every legal proceeding arising out of the contract, but that does not mean that there are not other proper and convenient forums for those proceedings.  So I don't find the -- the exclusivity in the language that was used in the forum selection clause to make that a mandatory provision.  So because I think that Arizona is a proper forum I do need to look at the personal jurisdiction issue, and I do find that the Plaintiff has established personal jurisdiction over the Defendant in Arizona.

As to the claims arising out of the contract between the parties, indeed, the contract specifically provides that the Plaintiff would perform his duties under the contract primarily from Arizona, so I think there's specific personal jurisdiction over the Defendant even if there's not general personal jurisdiction.  So at least for purposes of the claims that have been asserted in the -- the complaint, the Court finds that personal jurisdiction has been established.

And then finally, on the issue of inconvenient forum, the Court finds that the Defendant has not met its burden of establishing that Arizona is an inconvenient forum.

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

17

That perhaps is raised down the road, but at least on the record before me at this point in time the -- the burden has not been established.  The burden has not been met I should say that Arizona is an inconvenient forum.  So for all of those reasons it is ordered denying the Defendant's motion, and the litigation at this point will proceed here in Arizona.

Okay, I appreciate all of the arguments, and it's an interesting issue.  We'll -- we'll move forward here at this point.  Is there anything else we need to address here today?

MS. GILBERTSON:  No, Your Honor, I don't think so.

MR. HARRIS:  Not from me, Your Honor.  Thank you.

THE COURT:  Okay, thank you.  That will conclude the hearing.

(Proceedings concluded at 11:26:02 a.m.)

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

18

C E R T I F I C A T E

I, KIMBERLY C. McCRIGHT, CET, certified electronic transcriber, do hereby certify that the foregoing pages 1 through 18 constitute a full, true, and accurate transcript from electronic recording of the proceedings had in the foregoing matter.

DATED this 16th day of February, 2023.

/s/ Kimberly C. McCright
Kimberly C. McCright, CET
Certified Electronic Transcriber

CV2019-008242  GERALD BEOUGHER vs. REGENERATIVE MEDICINE INTERNATIONAL, LLC 07/18/2022  TRANSCRIPT
**VERBATIM REPORTING & TRANSCRIPTION, LLC (520) 303-7356**

19

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
K. Dyer, Deputy
8/29/2019 12:25:00 PM
Filing ID 10827019

Jon A. Titus, #006501
Jeffrey D. Harris, #031136
**TITUS BRUECKNER & LEVINE PLC**
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona 85255
480-483-9600
jtitus@tbl-law.com
jharris@tbl-law.com

*Attorneys for Regenerative Medicine*
 *International, LLC*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| GERALD BEOUGHER,<br><br>            Plaintiff,<br><br>    v.<br><br>REGENERATIVE MEDICINE INTERNATIONAL, LLC, a Florida limited liability company,<br><br>            Defendant. | No. CV2019-008242<br><br>**DEFENDANT'S SPECIAL APPEARANCE RULE 12(b)(2), (3), AND (6) MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**<br><br>(Assigned to the Hon. Sherry Stephens) |

Defendant Regenerative Medicine International, LLC, a Florida limited liability company ("RMI"), hereby files its special appearance Rule 12(b)(2), (3), and (6) motion to dismiss the Complaint filed on June 12, 2019 (the "Complaint") by Plaintiff Gerald Beougher ("Plaintiff" or "Beougher"), or, in the alternative, motion to transfer venue.

The Complaint is based on an alleged contract between the parties which contains a forum selection clause requiring that any lawsuits arising from it be filed in Pinellas County, Florida. Accordingly, the Complaint should be dismissed under Rule 12(b)(2), (3), or (6) for lack of personal jurisdiction, improper venue, or failure to state a claim upon which relief can be granted. The dismissal can be made without prejudice so that Plaintiff can bring his claims in a court in Pinellas County, Florida. Alternatively, this lawsuit should be transferred to a state or federal court, as specified below, in Pinellas County, Florida.

1

This Motion is made under a special appearance so as not to waive RMI's defenses to jurisdiction here through this filing. This Motion is supported by the record and by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTS**

The Complaint refers to two (2) alleged contracts between the parties. The first is an independent contractor agreement dated March 5, 2014, which was attached as Exhibit A to the Complaint (the "Independent Contractor Agreement"). The second is a promissory note of even date which was attached as Exhibit B to the Complaint (the "Promissory Note"). This Court lacks personal jurisdiction over the parties—or venue is improper here—even assuming the validity of these contracts.[1]

First, the Independent Contractor Agreement has a forum selection clause requiring that the parties file any lawsuits arising from the contract in Pinellas County, Florida. Section 7(b) of the Independent Contractor Agreement states, in relevant part:

> The validity, construction, enforcement, and interpretation of this Agreement shall be governed by the laws of the State of Florida and federal laws of the United States of America, excluding the laws of those jurisdictions pertaining to resolution of conflicts with laws of other jurisdictions. **The parties to this Agreement** (a) **consent to the personal jurisdiction of the state and federal courts having jurisdiction over Pinellas County, Florida,** (b) **stipulate that** the Circuit Court for **Pinellas County, Florida**, for a state court proceeding, **and the United States District Court for the Middle District of Florida** – Tampa Division, for a federal court proceeding, **are proper and convenient venues for every legal proceeding arising out of this Agreement and the Contractor's consultancy with RMI**, **and** (c) **waive any defense, whether asserted by motion or pleading**, that the Circuit Court for Pinellas County, Florida, or the United States District Court for the Middle District of Florida-Tampa

---

[1] RMI reserves the right to contest the validity of these two contracts in the event that this Motion is denied.

Division is an improper or inconvenient venue.[2]

It is notable that this section of the Independent Contractor Agreement has a handwritten addition immediately below it, as well as initials and a handwritten date next to it, demonstrating that the parties were aware of, and carefully read, this section.[3]

As shown above, the parties agreed in writing to the personal jurisdiction of the state and federal courts of Pinellas County, Florida. They further agreed that the state or federal courts in Pinellas County, Florida, were "proper and convenient venues **for every legal proceeding** arising out of" the Independent Contractor Agreement and Plaintiff's consultancy with RMI.[4] They even agreed to "waive any defense, whether asserted by motion or pleading," that the state or federal courts in Pinellas County, Florida, are improper or inconvenient venues.[5]

In sum, assuming the truth of the allegations in the Complaint, the Independent Contractor Agreement is a valid and binding agreement between the parties[6] and, by its own terms, the parties agreed to exclusive personal jurisdiction in Pinellas County, Florida, for any matter arising out of the contract.

Second, while the Promissory Note is silent on forum selection, its terms are superseded by the terms of the Independent Contractor Agreement. Section 7(f) of the Independent Contractor Agreement states, in relevant part: "**This Agreement records the entire understanding between the parties** with respect to the terms and conditions of the Contractor's consultancy with RMI **and supersedes any previous or contemporaneous agreement**, representation, or , [sic] understanding, oral or written, by either of them."[7] Since both contracts

---

[2] Complaint at Exhibit A thereto, Section 7(b) (emphasis added).

[3] *See id.*

[4] *See id.* (emphasis added).

[5] *See id.*

[6] *See, for example*, Complaint at ¶ 46.

[7] Complaint at Exhibit A thereto, at 8 (emphasis added).

3

were dated March 5, 2014,[8] they are contemporaneous agreements, and the terms of the Promissory Note are superseded by the terms of the Independent Contractor Agreement. The Promissory Note is silent on forum selection (though, instructively, it does explicitly incorporate Florida law).[9] Accordingly, the Independent Contractor Agreement's clear forum selection clause invoking personal jurisdiction and venue for the parties in Pinellas County, Florida, governs the parties for any disputes arising out of either contract.

## II.    ARGUMENT

### A.    The Complaint Should Be Dismissed under Rule 12(b)(2), (3), or (6).

The Complaint should be dismissed under Rule 12(b)(2), (3), or (6), Ariz. R. Civ. P. Since the parties' two contracts, which form the basis for Plaintiff's Complaint, require all lawsuits arising out of the contracts to be filed in Pinellas County, Florida, the Complaint filed here in Maricopa County, Arizona, should be dismissed for lack of personal jurisdiction, improper venue, or failure to state a claim upon which relief can be granted. In the alternative, this lawsuit should be transferred to either the state or federal court in Pinellas County, Florida, per the written agreement of the parties.

Under Rules 12(b), (b)(2), and (b)(3), a party may assert the defenses of lack of personal jurisdiction and improper venue to a complaint prior to filing a responsive pleading.[10]

As discussed below, Arizona law supports the dismissal of this lawsuit.[11] Under Arizona

---

[8] *See* Complaint at Exhibit A thereto, at 1; *see also* Complaint at Exhibit B thereto, at 1, 4.

[9] *See* Complaint at Exhibit B thereto, at 4 ("This Promissory Note has been executed and delivered and shall be governed by and construed in accordance with the laws of the State of Florida applicable to debts and obligations incurred and to be paid solely in such jurisdiction." (spacing normalized)).

[10] "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction; (3) improper venue . . . . A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."

[11] RMI reserves its right to argue that it is Florida law, and not Arizona law, which applies to the

4

law, (1) forum selection clauses like the one at issue are presumptively valid; (2) Plaintiff has the burden of demonstrating the propriety of personal jurisdiction; (3) though this is not (at this point) a federal case, instructively, when lawsuits are filed in a district court without proper venue, the district court *must* dismiss or transfer the case to any district in which the lawsuit could have been brought; and (4) Plaintiff would not be entitled to relief here under any set of facts susceptible of proof under his claims because of the parties' contractual agreement to have any disputes submitted to either state or federal court in Pinellas County, Florida. These arguments are treated below in turn.

### i.    *Forum selection clauses like the one at issue are presumptively valid.*

In Arizona, forum selection clauses are presumptively valid. Arizona law on this matter is well settled. The Arizona Court of Appeals has stated:

> Thus, **we hold that forum selection clauses are presumptively valid and that the complaining party bears the burden of proving the contract to be one of adhesion**. Where such a clause is contained in an adhesion contract, the court must examine the reasonable expectations of the adhering party and determine whether the contract is unconscionable.[12]

Therefore, a party who attempts to enforce a forum selection clause in Arizona enjoys a presumption of that clause's validity.[13] Further, if a party disputes the validity of the forum selection clause by arguing that the contract was one of adhesion, the disputing party bears the burden of proof on that issue.[14] And even if the contract is found to be one of adhesion—which Plaintiff has not argued here—the forum selection clause may still be held valid after the court

---

parties, per the language of their contracts. *See, for example*, Complaint at ¶¶ 26, 34.

[12] *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 35 P.3d 426, 428 (Ariz. App., 2001) (citing the Court of Appeals' own prior memorandum decision) (emphasis added).

[13] *See id.*

[14] *See id.*

5

"examine[s] the reasonable expectations of the adhering party and determine[s] whether the contract is unconscionable."[15] It is clear, then, that this presumption is strong and that defeating it would require Plaintiff to put on a significant amount of evidence beyond the mere allegations of the Complaint.

Here, Section 7(b) of the Independent Contractor Agreement is the forum selection clause which governs the parties. It requires that personal jurisdiction of the parties, and venue, be had only in courts located in Pinellas County, Florida. And, as shown above, RMI enjoys the presumption that this forum selection clause is valid. Based on the allegations of the Complaint, Plaintiff will not be able to overcome this presumption. Therefore, there is no personal jurisdiction over the parties in Arizona, nor venue in its courts.

### *ii.      Plaintiff has the burden of demonstrating the propriety of personal jurisdiction.*

As discussed in Section I above, the clear language of the two contracts attached to Plaintiff's Complaint demonstrate that there is no personal jurisdiction of the parties in courts outside of Pinellas County, Florida. Further, the Complaint itself alleges that RMI is a Florida limited liability company with its principal place of business in Palm Harbor, Florida, and that the parties agreed to submit themselves to Florida law.[16] Plaintiff has the burden to rebut this showing.

As stated by one persuasive Arizona source, "Although it is the defendant's obligation to raise the issue of whether the Court has or may exercise jurisdiction over the defendant, **the burden of demonstrating the propriety of exercising personal jurisdiction is on the plaintiff.**"[17] Further, Plaintiff's rebuttal may not simply rest on the allegations of the Complaint.

---

[15] *See id.*

[16] *See* Complaint at ¶¶ 2, 26, 34.

[17] DANIEL J. MCAULIFFE & SHIRLEY J. MCAULIFFE, ARIZONA PRACTICE: ARIZONA CIVIL RULES HANDBOOK 312 (2019 ed.) (emphasis added) (citing *Arizona Tile, L.L.C. v. Berger*, 223 Ariz. 491, 224 P.3d 988 (Ct. App. Div. 1 2010), as amended on other grounds, (Feb. 8, 2010) (where defendant challenges the existence of personal jurisdiction, plaintiff must establish a *prima facie* showing of jurisdiction, after which the burden shifts to the defendant to rebut that showing); *In*

"When the issue of a lack of personal jurisdiction is raised by motion, the plaintiff may not simply rest on the allegations of the complaint, but must come forward with sufficient facts to establish a *prima facie* showing that the exercise of jurisdiction is proper."[18] Plaintiff will not be able to meet that burden here.

### iii. *Instructively, when lawsuits are filed in a district court without proper venue, the district court* **must** *dismiss or transfer the case.*

Though this is not (at this point) a federal case, instructively, when lawsuits are filed in a district court without proper venue, the district court *must* dismiss or transfer the case to any district in which the lawsuit could have been brought. As held by a federal case in Arizona just this year:

> Where venue is improper under 28 U.S.C. §1391(b), the district court in which is filed a case laying venue in the wrong district **must 'dismiss, or if it be in the interest of justice, transfer such case** to any district . . . in which it could have been brought.' 28 U.S.C. §1406. Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating. Simply stated, [i]f a case falls within one of §1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

> Even in cases where venue is proper under §1391, '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' 28 U.S.C. § 1404(a).[19]

---

*re Consolidated Zicam Product Liability Cases*, 212 Ariz. 85, 127 P.3d 903 (Ct. App. Div. 1 2006); *Coast to Coast Marketing Co., Inc. v. G & S Metal Products Co., Inc.*, 130 Ariz. 506, 637 P.2d 308 (Ct App. Div. 2 1981)).

[18] *Id.* (citing *Macpherson v. Taglione*, 158 Ariz. 309, 762 P.2d 596 (Ct. App. Div. 2 1988).

[19] *McCormick v. Franklin Cnty. Court of Common Pleas Domestic Div.*, No. CV-19-02941-PHX-DJH (D. Ariz., 2019) (exact citation as yet unavailable) (internal citations, quotation marks, and ellipses omitted).

Here, venue is improper because the parties agreed in writing that any legal matter arising out of the contracts would be brought in either state or federal court in Pinellas County, Florida. And, as shown above, that forum selection clause is presumptively valid in Arizona. Further, RMI is a Florida limited liability company whose principal resides in Florida. The parties, by the Complaint's own allegations, agreed to Florida choice of law provisions in both of their contracts. RMI had the reasonable expectation that the parties' contracts would control and that any dispute arising out of the contracts would be heard in Pinellas County, Florida. It makes sense—and, indeed, it is more just—for this controversy to be heard in Pinellas County, Florida, where Plaintiff agreed in writing years ago to file any such lawsuits.

### iv. Plaintiff would not be entitled to relief here under any set of facts susceptible of proof under his claims.

Plaintiff would not be entitled to relief here under any set of facts susceptible of proof under his claims because of the parties' contractual agreement to have any disputes submitted to either state or federal court in Pinellas County, Florida. Thus, regardless of what amendments Plaintiff could make to the Complaint, such amendments would be futile, and would not, respectfully, endow this court with additional jurisdiction, venue, or ability to hear this case and grant relief to the parties. Thus, amendment of the Complaint, if sought, should be denied because, under Arizona law, "[l]eave to amend may be denied . . . where the proposed amendment is legally insufficient and would not affect the outcome."[20]

When considering a motion to dismiss, and Arizona court may grant it when "it appears

---

[20] DANIEL J. MCAULIFFE & SHIRLEY J. MCAULIFFE, ARIZONA PRACTICE: ARIZONA CIVIL RULES HANDBOOK 351 (2019 ed.) (emphasis added) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222, 6 Fed. R. Serv. 2d 1234 (1962); *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 826 P.2d 1217 (Ct. App. Div. 1 1991); *Moore v. Toshiba Intern. Corp.*, 160 Ariz. 205, 772 P .2d 28 (Ct. App. Div. 1 1989); *Matter of Torstenson's Estate*, 125 Ariz. 373, 609 P.2d 1073 (Ct. App. Div. 1 1980); *Home Ins. Co. v. Balfour-Guthrie Ins. Co.*, 13 Ariz. App. 327, 476 P.2d 533 (Div. 1 1970).

that the plaintiff would not be entitled to relief under any set of facts susceptible of proof under the claim as stated in the challenged pleading."[21] The Court can take into consideration that the venue and jurisdiction which is pled as a mere legal conclusion by Plaintiff in paragraph 4 of the Complaint does not alone establish venue and jurisdiction sufficient to survive a motion to dismiss. This is because "allegations that represent merely conclusions of law or unwarranted deductions are not credited."[22]

The Court, then, has the ability to dismiss the Complaint under Rule 12(b)(2), (3), or (6).

## III.    CONCLUSION

The Complaint should be dismissed because the two contracts upon which the Complaint was based set forth that any lawsuits arising from them be filed in Pinellas County, Florida. Accordingly, the Court should dismiss this lawsuit under Rule 12(b)(2), (3), or (6), Ariz. R. Civ. P. The dismissal can be made without prejudice so that Plaintiff can file his claims in a court in Pinellas County, Florida.

Alternatively, this lawsuit should be transferred to either (1) the Circuit Court for Pinellas County, Florida, for a state court proceeding, or (2) the United States District Court for the Middle District of Florida – Tampa Division, for a federal court proceeding, as the parties agreed in writing, per the allegations contained in and attached to Plaintiff's Complaint, that such locales "are proper and convenient venues **for every legal proceeding**."[23]

As this matter arises out of contract, RMI requests an award of its costs and attorneys' fees under A.R.S. §§ 12-341 and -341.01.

/ / /

---

[21] *Id.* at 318 (emphasis added) (internal citations omitted).

[22] *Id.* (citing *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 189 P.3d 344 (2008); *Aldabbagh v. Arizona Dept. of Liquor Licenses and Control*, 162 Ariz. 415, 783 P.2d 1207 (Ct. App. Div. 2 1989).

[23] Complaint at Exhibit A thereto, Section 7(b) (emphasis added).

RESPECTFULLY SUBMITTED this 29th day of August, 2019.

**TITUS BRUECKNER & LEVINE PLC**

*/s/ Jeffrey D. Harris*
By :_____
Jon A. Titus
Jeffrey D. Harris
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona 85255
*Attorneys for Regenerative Medicine*
  *International, LLC*

**E-FILED** this 29th day of August, 2019.

**COPY MAILED and E-SERVED** this same day to:

Shayna H. Balch
Lori A. Guner
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, AZ 85012-2425
sbalch@fisherphillips.com
lguner@fisherphillips.com
*Attorneys for Plaintiff Gerald Beougher*

*/s/ Nichole Somers*
_____

P:\DOCS\10999\000\DRAFTS\32O9843.DOCX

10

# EXHIBIT 3

| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

MIDDLE DISTRICT OF FLORIDA

Case number *(if known)* _____  Chapter **7**

☐ Check if this an
amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy   **4/19**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
| --- | --- | --- |
| 1. | **Debtor's name** | **Regenerative Medicine International, LLC** |
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **46-1606312** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| **34156 US Highway 19 N** **Palm Harbor, FL 34684** Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Pinellas** County | **Location of principal assets, if different from principal place of business** Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)  _____

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | **Regenerative Medicine International, LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7.  Describe debtor's business**  A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
   See http://www.uscourts.gov/four-digit-national-association-naics-codes.

   _____

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

■ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check all that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number | |

**10.  Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

■ No

☐ Yes.

| | Debtor | | | | Relationship | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number, if known | |

Debtor **Regenerative Medicine International, LLC**
Name

Case number (*if known*) _____

**11. Why is the case filed in *this district?*** | *Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

### ▮ Statistical and administrative information

**13. Debtor's estimation of available funds** | . | *Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☑ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☑ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☑ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

Debtor **Regenerative Medicine International, LLC**          Case number (*if known*) _____
Name

| **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on      **September 12, 2019**
                 MM / DD / YYYY

*X* **/s/ Marissa Harrell**                    **Marissa Harrell**
Signature of authorized representative of debtor          Printed name

Title   **Owner**

**18. Signature of attorney**

*X* **/s/ Michael C. Markham**                 Date  **September 12, 2019**
Signature of attorney for debtor                          MM / DD / YYYY

**Michael C. Markham**
Printed name

**Johnson, Pope, Bokor,**
Firm name

 **Ruppel & Burns, LLP**
**401 East Jackston Street #3100**
**Tampa, FL 33602**
Number, Street, City, State & ZIP Code

Contact phone   **813-225-2500**      Email address _____

**0768560 FL**
Bar number and State

# EXHIBIT 4

ORDERED.

Dated:  October 27, 2021

_____
Michael G. Williamson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

REGENERATIVE MEDICINE
INTERNATIONAL, LLC,

      Debtor.

_____

GERALD BEOUGHER,

      Movant,

vs.

REGENERATIVE MEDICINE
INTERNATIONAL, LLC,

      Respondent.

Case No.:  8:19-bk-08646-MGW

Chapter 7

**ORDER APPROVING STIPULATION
FOR RELIEF FROM AUTOMATIC STAY**

THIS PROCEEDING came for consideration before the Court to considered the Amended Stipulation (the "Stipulation") [Dkt. No. 77] of Creditor Gerald Beougher ("Beougher") and Chapter 7 Trustee Douglas N. Menchise (the "Trustee" and with Beougher, the "Parties"); the Stipulation was served upon all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to respond within 21 days of the date of service; a hearing to consider the Stipulation and the limited objection to the Stipulation filed by Marissa Harrell and Cosmetic Medicine Enterprises, Inc. (the "Harrell Objection")

00293784 4

[Dkt. No. 79] having been held on October 25, 2021 whereby the Court granted the Stipulation and overruled the Harrell Objection; and for good cause appearing under the circumstances,

Accordingly, it is **ORDERED** as follows:

1.      The Harrell Objection is overruled.

2.      The Stipulation is granted in its entirety.

3.      The automatic stay of 11 U.S.C. § 362(a) and all other bankruptcy stays and injunctions are hereby terminated for all purposes.

4.      The Court hereby waives the 14-day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3).

5.      The Stipulation shall be binding upon the Parties hereto, their successors, and assigns.

6.      The United States Bankruptcy Court for the Middle District of Florida shall retain jurisdiction to resolve all disputes concerning the interpretation and enforcement of the Stipulation.

7.      Attorney Cody Jess is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three day of entry of this order.

# EXHIBIT 5

Clerk of the Superior Court
*** Electronically Filed ***
07/20/2022 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2019-008242                                          07/18/2022


                                            CLERK OF THE COURT
HONORABLE DEWAIN D. FOX                          J. Eaton
                                                  Deputy



GERALD BEOUGHER                            CODY J JESS

v.

REGENERATIVE MEDICINE                       JEFFREY D. HARRIS
INTERNATIONAL L L C



                                            JUDGE FOX



                        MINUTE ENTRY


        East Court Building – Courtroom 412

        11:01 a.m. This is the time set for Oral Argument regarding Defendant Regenerative
Medicine International LLC's August 29, 2019 Special Appearance Rule 12(b)(2), (3), and (6)
Motion to Dismiss the Complaint or, in the Alternative, Motion to Transfer Venue. The following
parties appear via Court Connect: Plaintiff is represented by counsel, Brittany M. Gilbertson for
counsel of record, Cody J. Jess. Defendant is represented by counsel, Jeffrey D. Harris and Jon A.
Titus.

        A record of the proceedings is made digitally in lieu of a court reporter.

        The Court shares its preliminary analysis with counsel.

        Arguments are presented to the Court.

        11:06 a.m. Plaintiff, Gerald Beougher, is present.

Docket Code 005                      Form V000A                              Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2019-008242                                                      07/18/2022


Arguments continue to the Court.

For the reasons stated on the record,

IT IS ORDERED denying Defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Transfer Venue.

11:26 a.m. Matter concludes.

# EXHIBIT 6

MOYES SELLERS & HENDRICKS
Cody J. Jess (No. 025066)
Lawrence Palles (No. 020263)
Nicholas J. Walter (No. 036410)
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
cjess@law-msh.com
lpalles@law-msh.com
nwalter@law-msh.com
*Attorneys for Plaintiff Gerald Beougher*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| Gerald Beougher, | Case No. 2:22-cv-01930-SPL |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF GERALD BEOUGHER** |
| Regenerative Medicine International, LLC, a Florida limited liability company; Regenerative Processing Plant, LLC, a Florida limited liability company; Regener-Eyes, LLC, a Florida limited liability company; C. Randall Harrell and Marissa Harrell, husband and wife, | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746, I, Dr. Gerald Beougher, give this Declaration in support of my Responses to Defendants' Motions to Dismiss.

1.      I am over the age of 18 and I am competent to testify regarding the contents of this Declaration.

2.      On or about March 4, 2014, I had a dinner meeting with Dr. C. Randall Harrell. During that meeting, Dr. Harrell invited me to work for Regenerative Medicine International, LLC ("RMI"). Dr. Harrell said I could do most of that work for RMI in Arizona. At that time, I was unaware of the existence of either Regenerative Processing Plant, LLC or Regener-Eyes, LLC.

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00327608 6

3. Before entering into a contract to work for RMI from Arizona, Dr. Harrell made numerous representations to me about RMI's business, assets, and potential for growth.

4. While in Arizona, I had numerous phone calls with Dr. Harrell and Marissa Harrell. The Harrells initiated nearly all of these phone calls with me while I was in Arizona, knowing I was in Arizona.

5. On March 5, 2014, I signed a Contractor Agreement with RMI. In that Agreement, RMI, the Harrells, and I agreed I would work for RMI in Arizona.

6. Pursuant to the terms of that Contractor Agreement, I performed work I thought was all for RMI. I worked to develop two products: one based on human amniotic fluid ("HAF"), and another known as Human Amniotic Membrane ("HAM").

7. While I was in Arizona, Dr. Harrell instructed me to perform numerous tasks. I believed all of these tasks were for RMI. These tasks included:

    a.    Designing the clean room.

    b.    Writing an entire Standard Operating Procedures book.

    c.    Writing equipment lists.

    d.    Researching suppliers, including, but not limited to, finding a syringe manufacturer.

    e.    Researching a source for HAF.

    f.    Setting up inventory, such as arranging for packaging and ordering supplies for the amniotic pack.

    g.    Seeking out investors for the Harrells' companies, including, but not limited to, RMI.

8. RMI and the Harrells knew I was in Arizona while performing many of these tasks.

9. While I was in Arizona, the Harrells reached out to me to ask about the status of these and other tasks I was performing.

10. Per the terms of the Contractor Agreement, RMI was to pay me monthly, including on June 1, 2014.

11. RMI did not pay me on June 1, 2014. I asked Dr. Harrell why RMI had failed to do so, and he invited me to lunch to discuss.

12. At that lunch, which took place in mid-June 2014, Dr. Harrell informed me for the first time that Processing Plant was a company separate and apart from RMI. Dr. Harrell also told me that all the work I had performed was for Processing Plant, not for RMI. Accordingly, Dr. Harrell stated I would not be paid for that work. I replied that I would not work for free. Dr. Harrell and I then agreed I would continue working for both RMI and Processing Plant. For RMI, I would continue my work on Humallagen. For Processing Plant, I would continue my work with HAF and HAM. Dr. Harrell and I agreed that Processing Plant would pay me at the same rate and under the same terms as RMI had contracted for in the Contractor Agreement. Dr. Harrell and I also agreed that RMI would pay me half the monthly rate agreed-upon in the Contractor Agreement, with the rest to be paid in a later balloon payment. Dr. Harrell stated he would prepare a contract identical to the RMI Contractor Agreement but never did.

13. After the June 2014 lunch meeting, I continued working on HAF, HAM, and Humallagen. I then understood that my work for HAF and HAM was for Processing Plant and that my work for Humallagen was for RMI.

14. Processing Plant never paid me for my work on HAF and HAM.

15. In August or September 2014, I began working on a dry eyes therapy using HAF. I researched this therapy in Arizona.

16. Dr. Harrell asked me to write an initial technical submission for this therapy, then insisted I send that submission to the Harrells' patent attorney. In August 2015, I drafted that submission in Arizona.

17. In the initial patent paperwork, the product I developed was referred to as Regener-Eyes.

18. I have subsequently learned that Dr. Harrell applied for and obtained several

patents based on my Regener-Eyes research and development, which I believe were registered to MAM Holdings of West Florida, LLC ("MAM West Florida").

19. On the few occasions on which I was paid, the checks were signed by Mrs. Harrell and came from an RMI bank account, even for the work I was apparently performing for Processing Plant.

20. The Harrells were constantly looking for investors in Arizona. They asked me to reach out to my contacts in Arizona to generate more investors for RMI and the Harrells.

21. In September 2015, in part because I still had not been paid for my work on HAF and HAM, Dr. Harrell wrote an agreement to try to resolve the money he owed me. The terms of this agreement were that I would pay the Harrells $250,000 in exchange for a ten percent share of Processing Plant; the Harrells and I would share patent rights for the dry eye therapy; and I would be required to work for the Harrells for a set number of years. These terms were completely in Dr. Harrell's favor and so I did not accept them.

22. One month later, Dr. Harrell locked me out of RMI's offices.

23. Over the next few years, Dr. Harrell called me several times, ostensibly to try to resolve our disputes. I asked for what I was owed under the Contractor Agreement, but Dr. Harrell refused to pay it. Instead, Dr. Harrell stated he was going to take the money I was owed under the Contractor Agreement and use it to hire lawyers to represent him against me.

24. I did not learn about the company Regener-Eyes, LLC until 2021. I then learned that the Harrells had organized that company and had been (and still are) developing and selling products based on the therapy I researched. The Harrells and Regener-Eyes, LLC have not credited or paid me for that work.

25. I suffered all my losses while I was in Arizona.

26. For example, I intended to retire in Arizona. Because of Defendants' efforts, I have been unable to enjoy my planned retirement in Arizona.

MOYES SELLERS &
HENDRICKS

PHOENIX, AZ

00327608 6

27.     I lost $500,000 from an Arizona bank account because of Defendants' misrepresentations. The Harrells had repeatedly called me while I was in Arizona, trying to convince me to loan this money to RMI. I eventually sent the Harrells the $500,000 they demanded. I wired that money from my Arizona bank account.

28.     I incurred approximately $18,000 in pursuing RMI in its bankruptcy case in Florida.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: Mar 17, 2023                    .

*Gerald Beougher*
Gerald Beougher (Mar 17, 2023 16:15 PDT)

Gerald Beougher

MOYES SELLERS &
HENDRICKS

PHOENIX, AZ

00327608 6

- 5 -

# Declaration

Final Audit Report                                                                 2023-03-17

| | |
|---|---|
| Created: | 2023-03-17 |
| By: | Julie Larsen (jlarsen@law-msh.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtWK421L09N9NPIXurOgaqbzgiW-kzxZW |

## "Declaration" History

📄 Document created by Julie Larsen (jlarsen@law-msh.com)
2023-03-17 - 11:12:16 PM GMT- IP address: 184.191.131.93

📤 Document emailed to jerryb@uniquelabservices.com for signature
2023-03-17 - 11:12:34 PM GMT

📄 Email viewed by jerryb@uniquelabservices.com
2023-03-17 - 11:14:41 PM GMT- IP address: 66.249.84.67

✒ Signer jerryb@uniquelabservices.com entered name at signing as Gerald Beougher
2023-03-17 - 11:15:53 PM GMT- IP address: 68.231.152.34

✒ Document e-signed by Gerald Beougher (jerryb@uniquelabservices.com)
Signature Date: 2023-03-17 - 11:15:55 PM GMT - Time Source: server- IP address: 68.231.152.34

✅ Agreement completed.
2023-03-17 - 11:15:55 PM GMT

Names and email addresses are entered into the Acrobat Sign service by Acrobat Sign users and are unverified unless otherwise noted.

**Adobe Acrobat Sign**