**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Beougher,<br><br>    Plaintiff,<br><br>vs.<br><br>Regenerative Medicine International LLC, et al.,<br><br>    Defendants. | No. CV-22-01930-PHX-SPL<br><br>**ORDER** |

Before the Court are a Motion to Dismiss for Lack of Personal Jurisdiction; or, in the Alternative, Motion to Transfer filed by Defendant Regenerative Medicine International, LLC (Doc. 26); a Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative Motion to Transfer Venue and Motion to Dismiss for Failure to State Cause of Action filed by Defendants Dr. C. Randall Harrell, Marissa Harrell, Regenerative Processing Plant, LLC, and Regener-Eyes, LLC (Doc. 28); and a Motion to Strike filed by Plaintiff Gerald Beougher (Doc. 44). The Court rules as follows.[1]

**I.   BACKGROUND**

Plaintiff Gerald Beougher is an Arizona resident. (Doc. 1 at 1). Defendants Dr. C. Randall Harrell and Marissa Harrell (collectively, "the Harrells") are a married couple residing in Florida. (Doc. 24 at 2). Defendant Regenerative Medicine International

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

("RMI") is a Florida LLC, with Ms. Harrell as its sole member and Dr. Harrell as its Chief Executive Officer ("CEO"). (Doc. 24 at 1–2). Defendant Regenerative Processing Plant ("RPP") is a Florida LLC, with Ms. Harrell as a manager and Dr. Harrell as a member. (Doc. 24 at 2). Defendant Regener-Eyes is a Florida LLC, with the Harrells as members and/or managers. (Doc. 24 at 2).

Sometime before January 2014, the Harrells hired a licensed brokerage firm to solicit investors for RMI. (Doc. 24 at 3). The firm prepared a memorandum for distribution to potential investors with information about "a natural collagen dermal filler," Humallagen, "purportedly invented by Dr. Harrell." (Doc. 24 at 3). In February 2014, Plaintiff contacted the firm in response to the memorandum and was referred to Dr. Harrell. (Doc. 24 at 5). Plaintiff alleges that the memorandum, as well as other information later provided by RMI and Dr. Harrell, contained a variety of misrepresentations about RMI. (Doc. 24 at 6).

After discussions between Plaintiff and Dr. Harrell, on March 5, 2014, Plaintiff and RMI entered into two contracts. (Doc. 24 at 5–7). First, Plaintiff and RMI executed a Promissory Note in which Plaintiff agreed to loan $500,000 to RMI, with RMI making quarterly interest payments until a final balloon payment due March 5, 2019. (Doc. 24 at 7). Plaintiff and RMI also executed an independent contractor agreement (the "Contractor Agreement") in which Plaintiff agreed to serve as RMI's Chief Operating Officer ("COO") and provide consulting services in exchange for $16,666.67 per month. (Doc. 4 at 7–8). The Contractor Agreement provided that Plaintiff would "be available as reasonably required through telephone conferences, at his offices in Scottsdale, Arizona and correspondence." (Doc. 24 at 8).

In the following months, pursuant to the Contractor Agreement, Plaintiff performed a variety of work for RMI in Arizona. (Doc. 24 at 10). Nonetheless, RMI never paid Plaintiff the full amount due to him under the Contractor Agreement, instead paying him only half as much monthly. (Doc. 24 at 9–10). In July 2015, a separate dispute arose between Plaintiff, Dr. Harrell, and RMI. (Doc. 24 at 12–13). The parties

terminated the Contractor Agreement, and although RMI continued making some payments to Plaintiff in Arizona under the Promissory Note, Plaintiff alleges that he has not been paid in full. (Doc. 24 at 13).

On June 13, 2019, Plaintiff filed a Complaint against RMI only in Maricopa County Superior Court alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. 1 at 2). The case was soon stayed for more than two years pending RMI's bankruptcy proceedings in Florida. (Doc. 1 at 2). After the stay was lifted, on July 18, 2022, the Maricopa County Superior Court denied RMI's Rule 12(b)(2), (3), and (6) Motion to Dismiss or, in the Alternative, to Transfer Venue. (Doc. 35 at 58–59). On October 12, 2022, Plaintiff filed a First Amended Complaint in Superior Court, for the first time naming RPP, Regener-Eyes, and the Harrells as Defendants. (Doc. 1-2). On November 11, 2022, the newly named Defendants removed the case to this Court. (Doc. 1).

On January 11, 2023, Plaintiff filed the operative Second Amended Complaint ("SAC") alleging eight counts: (1) breach of the Promissory Note against RMI and the Harrells; (2) breach of the Promissory Note's implied covenant of good faith and fair dealing against RMI and the Harrells; (3) breach of the Contractor Agreement against RMI and the Harrells; (4) breach of the Contractor Agreement's implied covenant of good faith and fair dealing against the Harrells; (5) negligent misrepresentation against RMI and the Harrells; (6) fraudulent inducement against RMI and the Harrells; (7) breach of fiduciary duty against the Harrells; and (8) unjust enrichment against RPP, Regener-Eyes, and the Harrells. (Doc. 26). On March 17, 2023, Plaintiff voluntarily dismissed the breach of fiduciary duty claim. (Doc. 36).

On January 25, 2023, RMI filed its pending Motion to Dismiss for Lack of Personal Jurisdiction; or, in the Alternative, Motion to Transfer, which has been fully briefed. (Docs. 26, 35, 38). On January 31, 2023, the other Defendants filed their pending Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative Motion to Transfer Venue and Motion to Dismiss for Failure to State Cause of Action, which has

been fully briefed. (Docs. 28, 37, 43). On April 25, 2023, Plaintiff filed his pending Motion to Strike, which has been fully briefed. (Docs. 44–46).

## II. PERSONAL JURISDICTION

Because Defendants' Motions to Transfer are brought in the alternative, the Court first addresses the Motions to Dismiss for Lack of Personal Jurisdiction.

### a. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(2) authorizes dismissal for lack of personal jurisdiction. When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion is based on written materials rather than an evidentiary hearing, as here, the Court must determine "whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (citation, quotation marks, and alteration omitted). A plaintiff "cannot 'simply rest on the bare allegations of its complaint,'" but "uncontroverted allegations in the complaint must be taken as true." *Id.* (citation omitted).

### b. DISCUSSION

When no federal statute is applicable to govern personal jurisdiction, as is the case here, "the district court applies the law of the state in which the district court sits." *Id.* "Arizona's long-arm jurisdictional statute is co-extensive with federal due process requirements; therefore, the analysis of personal jurisdiction under Arizona law and federal due process is the same." *Biliack v. Paul Revere Life Ins. Co.*, 265 F. Supp. 3d 1003, 1007 (D. Ariz. 2017). For a court to exercise personal jurisdiction, federal due process requires that a defendant have "certain minimum contacts" with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Personal jurisdiction can be general or specific. *Biliack*, 265 F. Supp. 3d at 1007. Here, Plaintiff argues only that the Court has specific jurisdiction over Defendants.

The Ninth Circuit applies a three-prong test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of establishing the first two prongs. *Id.* If Plaintiff satisfies them, the burden shifts to Defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citation omitted).

Plaintiff argues that the Court has personal jurisdiction over RMI based on RMI's contacts with Arizona. Plaintiff then argues that the Court has personal jurisdiction over the Harrells because RMI is their alter ego. Finally, Plaintiff argues that the Court has personal jurisdiction over RPP and Regener-Eyes because they are alter egos of the Harrells. Thus, the Court will begin by addressing whether it has personal jurisdiction over RMI.

### i. RMI

RMI argues that Plaintiff has failed to demonstrate only the first prong of the test for specific personal jurisdiction—the purposeful availment or purposeful direction prong. "'[P]urposeful availment' and 'purposeful direction' are distinct concepts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (citation omitted). "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* But where, as here, "both contract and tort claims are at issue, both tests are relevant." *Id.* Thus, the Court will

conduct both analyses.[2]

### 1. Purposeful Availment

Purposeful availment is established when "a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Schwarzenegger*, 374 F.3d at 802 (citation omitted). The defendant must have "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation, quotation marks, and alteration omitted). The unilateral acts of another party are insufficient to establish personal availment. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (citation omitted). "Purposeful availment can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023).

Here, Plaintiff has established that the contractual relationship between the parties "envisioned continuous and wide-reaching contacts" with Arizona such that RMI purposefully availed itself of the benefits and protections of Arizona law. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). First, as to the parties' negotiations, even if the Court accepts RMI's argument that the initial memorandum Plaintiff received about Humallagen was not a solicitation, Plaintiff alleges that RMI—knowing that Plaintiff was

---

[2] Plaintiff argues that this Court should treat the ruling of the Maricopa County Superior Court that there is specific personal jurisdiction over RMI in Arizona as the law of the case. "The law of the case doctrine 'generally preclude[s] [courts] from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1190 (9th Cir. 2016) (alterations in original) (citation omitted). Even if the doctrine applies to state court rulings following removal to federal court, it does not apply following the filing of an amended complaint. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) ("The district court *may* decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination."). Thus, the Maricopa County Superior Court's denial of RMI's Motion to Dismiss Plaintiff's original Complaint for lack of personal jurisdiction does not bind this Court in its ruling on RMI's Motion to Dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction.

an Arizona resident—repeatedly urged him over the course of several discussions to loan money to RMI despite Plaintiff's reservations, eventually resulting in the $500,000 loan. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."); *LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-cv-01278-JSC, 2014 WL 3836792, at *4 (N.D. Cal. Aug. 1, 2014). Thus, RMI ultimately "sought out a contractual relationship in the forum state." *Davis*, 71 F.4th at 1165. Even though RMI was physically absent from Arizona during the negotiation of the Promissory Note and Contractor Agreement, its solicitation of business in the state supports a finding of purposeful availment. *See Burger King Corp.*, 471 U.S. at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . .").

Next, regarding the contracts' terms and contemplated consequences, RMI's final payment under the Promissory Note was due five years after the Note's execution, and the Contractor Agreement had an indefinite term and was actually in effect for more than a year before it was terminated—creating a "multi-year business relationship" and "continuing obligations" between the parties. *Silk v. Bond*, 65 F.4th 445, 457 (9th Cir. 2023); *see LocusPoint Networks*, 2014 WL 3836792, at *6 (finding that the parties' coordination over more than two years amounted to significant continuing obligations). In addition, the Contractor Agreement specifically requires Plaintiff to be available as required at his Scottsdale, Arizona office. (Doc. 24 at 85). Although "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract," the fact that at least some services for which RMI contracted were to be performed in Arizona is one relevant factor that weighs in favor of personal availment. *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015); *see Silk*, 65 F.4th at 457. Still, because the Contractor Agreement is governed by Florida law and contains a permissive forum selection clause for Florida, the Court considers the contract terms and the contemplated

future consequences to be neutral overall as to whether RMI purposefully availed itself of doing business in Arizona.

Finally, the parties' actual course of conduct supports a finding of purposeful availment. RMI received $500,000 under the Promissory Note from Plaintiff's Arizona bank account. (Doc. 24 at 7). Plaintiff performed significant work for RMI in Arizona under the Contractor Agreement. (Doc. 24 at 10). For several years, RMI mailed quarterly interest payments under the Promissory Note to Plaintiff's Arizona address. (Doc. 24 at 13). These facts are analogous to the facts in *Silk*, where the defendant worked for the plaintiff primarily from California, paid the plaintiff into his California bank account, and mailed the plaintiff documents for review each month—which the Ninth Circuit found supported the existence of "continuing and wide-reaching contacts" necessary for personal jurisdiction in California. *Silk*, 65 F.4th at 456. Considering all of the relevant facts, the Court finds that RMI "reached beyond its home" and entered a continuous and substantial contractual relationship with Plaintiff centered in Arizona, purposefully availing itself of the privileges of conducting business in the forum. *Ford Motor Co.*, 141 S. Ct. at 1025.

In *Silk*, the Ninth Circuit rejected an argument—similar to the one that RMI makes here—that personal jurisdiction could not derive from the plaintiff's own contacts with the forum. There, the Ninth Circuit found that there was no argument that California had jurisdiction "by virtue of [the plaintiff] establishing residence or property ownership in California," but rather that the defendant "availed himself of [the Plaintiff's] California-based services." *Silk*, 65 F.4th at 458. Likewise, here, the Court finds purposeful availment not because Plaintiff is an Arizona resident but because RMI availed itself of Plaintiff's Arizona-based services by specifically soliciting and contracting for his business and services. Thus, Plaintiff has established the purposeful availment prong.

2. Purposeful Direction

"Purposeful direction 'requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant

8

knows is likely to be suffered in the forum state.'" *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citation and alteration omitted). When considering whether a defendant's conduct is expressly aimed at the forum state, the Court must look at "contacts that the defendant *himself* creates with the forum" and "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1143 (citation and quotation marks omitted). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection with the forum." *Id.* at 1142 (citation omitted).

As discussed above, Plaintiff has established that RMI intentionally took action expressly aimed at Arizona by pursuing Plaintiff's Arizona-based business and services and contracting for the same. *See Silk*, 65 F.4th at 457. Plaintiff alleges that during that pursuit and in inducing Plaintiff to enter into the contracts, RMI made a variety of misrepresentations, including about its assets and business plan, causing foreseeable financial harm to Plaintiff in Arizona. Rather than being random, fortuitous, or attenuated, the multi-year business relationship that RMI intentionally entered for Plaintiff's services in Arizona created a substantial connection between RMI and the forum. *See Burger King Corp.*, 471 U.S. at 475. Accordingly, the Court finds that Plaintiff has established the first prong of the test for specific personal jurisdiction—the only contested prong—with respect to RMI. This Court therefore has personal jurisdiction over RMI.

### ii. *The Harrells*

Plaintiff argues that the Court has personal jurisdiction over the Harrells only under an alter ego theory. "A party seeking to establish jurisdiction over a person or entity can . . . use the alter ego theory to 'extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (citation and emphasis omitted). The Court first addresses the pending Motion to Strike (Doc. 44), in which Plaintiff asks the Court to strike affidavits attached to the Reply in Support of the Motion

to Dismiss (Doc. 43) filed by the Harrells, RPP, and Regener-Eyes (collectively, the "Non-RMI Defendants"). The Court then addresses whether RMI is an alter ego of the Harrells.

### 1. Motion to Strike

Plaintiff moves to strike Exhibits A and B to the Non-RMI Defendants' Reply in Support of their Motion to Dismiss (Docs. 43-1, 43-2). Plaintiff argues that they are evidence improperly raised for the first time at the reply stage. (Doc. 44). Exhibit A is a Declaration of Ms. Harrell setting forth facts in support of the argument that RMI is not the Harrells's alter ego. (Doc. 43-1). Exhibit B is a Declaration of Richard T. Welch, the Chief Financial Officer of RPP and Regener-Eyes, setting forth facts in support of the argument that RPP and Regener-Eyes are not the Harells's alter ego. (Doc. 43-2).

The Non-RMI Defendants argue that the Declarations are proper rebuttal evidence because Plaintiff's alter ego theory of personal jurisdiction was raised for the first time in his Response to the Motion to Dismiss (Doc. 37). Plaintiff counters that alter ego liability was alleged in the SAC. To be sure, the SAC plainly alleges that the Harrells are liable for breach of the Contractor Agreement and Promissory Note executed by RMI as its alter egos. (Doc. 24 at 16–18, 20, 29). But the SAC does not allege *jurisdiction* based on an alter ego theory such that the Non-RMI Defendants were on notice of such an argument prior to the filing of their Motion to Dismiss.[3] (*See* Doc. 24 at 1–3). Nor does the SAC allege *any* alter ego theory as to RPP or Regener-Eyes. Thus, the Declarations are appropriate rebuttal evidence to Plaintiff's alter ego jurisdiction argument, which was raised for the first time in his Response to the Motion to Dismiss. *See Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2020 WL 1536326, at *7 (D. Ariz. Mar. 31, 2020). The Motion to Strike will therefore be denied.

///

---

[3] Instead, the SAC makes a variety of allegations appearing to relate to the Non-RMI Defendants' contacts with Arizona, suggesting an effort to establish specific personal jurisdiction independent from RMI. (Doc. 24 at 2–3, 5, 10–11).

2. Alter Ego Theory

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation, quotation marks, and alterations omitted). The first prong "requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'" *Id.* (citation omitted). In evaluating whether that prong is met,

> courts consider factors like: commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and failure to adequately capitalize a corporation.

*Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 52 (N.D. Cal. 2020); *see also TBS Props. LLC v. United States*, No. CV-20-00195-PHX-DWL, 2022 WL 783040, at *6 (listing relevant factors including "common officers or directors, the parent's financing of the subsidiary, the parent's payment of the subsidiary's salaries and other expenses, . . . and the opposing parties' lack of knowledge of the subsidiary's separate corporate existence" (citation and quotation marks omitted)). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073.

It is true that some factors support alter ego jurisdiction over the Harrells. Ms. Harrell was RMI's only member, and Dr. Harrell was its CEO. (Doc. 24 at 1–2). Moreover, RMI's only asset was a trademark at the time the Contractor Agreement was executed, and its only source of capitalization was the loan from Plaintiff. (Doc. 37 at 82, 168); *cf. Keams v. Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 724 (D. Ariz. 1997).

Still, on the whole, Plaintiff fails to make a prima facie case that the Harrells controlled RMI to such a degree that RMI had no separate identity. There is evidence that RMI did not commingle funds with the Harrells, nor did RMI distribute funds to or otherwise pay the Harrells. (Doc. 43-1 at 4). RMI filed Articles of Organization and annual reports.[4] (Doc. 43-1 at 4). Although the SAC alleges on information and belief that the Harrells received funds from Plaintiff's loan to RMI via a transfer from another entity of which Ms. Harrell was the sole member, her sworn Declaration states facts establishing otherwise and therefore controls. (Doc. 43-1 at 5); *see Schwarzenegger*, 374 F.3d at 800. Plaintiff, as RMI's Chief Operating Officer, had full knowledge of RMI's purpose and financial condition. (Doc. 43-1 at 5). Taking all of these facts together, the Court finds that Plaintiff has failed to establish the unity of interest between the Harrells and RMI that is necessary for alter ego jurisdiction, and Plaintiff's claims against the Harrells will be dismissed for lack of personal jurisdiction.

### *iii.   RPP and Regener-Eyes*

Plaintiff's only argument to support this Court's personal jurisdiction over RPP and Regener-Eyes is that they are alter egos of the Harrells—even though Plaintiff does not make any alter ego assertion in the SAC regarding RPP and Regener-Eyes. Even if Plaintiff had pled an alter ego theory, because the Court has determined that it lacks personal jurisdiction over the Harrells, Plaintiff's argument necessarily fails. Plaintiff makes an alternative request for jurisdictional discovery to establish the Harrells' control of RPP and Regener-Eyes. But even if Plaintiff presented sufficient evidence that RPP and Regener-Eyes are alter egos of the Harrells, it would not establish personal jurisdiction given that the Court has found that it lacks personal jurisdiction over the Harrells. Accordingly, the claims against RPP and Regener-Eyes will be dismissed and

---

[4] Plaintiff argues that RMI's lack of an operating agreement supports alter ego jurisdiction, but where an entity is not required to have an operating agreement—as is the case for an LLC under Florida law—the entity's lack of an operating agreement does not support application of the alter ego theory. *See In re Atlantis Water Sols., LLC*, No. 18-60060-7, 2018 WL 6199127, at *5 (Bankr. D. Mont. Nov. 5, 2018); Fla. Stat. § 605.0102(45).

Plaintiff's request for jurisdictional discovery will be denied.

### III. MOTION TO TRANSFER

Because the Non-RMI Defendants will be dismissed for lack of personal jurisdiction, the Court considers only RMI's Alternative Motion to Transfer.

#### a. LEGAL STANDARD

Section 1404(a) of the Judicial Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation and quotation marks omitted). The party seeking transfer generally bears the burden "to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 759–60 (C.D. Cal. 2016).

#### b. DISCUSSION

RMI asks this Court to transfer this action to the District Court for the Middle District of Florida. Plaintiff does not dispute that the action could have been brought there, so the Court need only consider whether transfer would be more convenient and in the interest of justice. *See* 28 U.S.C. § 1404(a). In making such a determination, courts may consider many factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99.[5]

---

[5] RMI argues that the presence of a forum selection clause in the Contractor

Here, the first and second factors favor transfer as the Promissory Note and Contractor Agreement were executed in Florida and are governed by Florida law. (Doc. 24 at 82, 89, 91). On the other hand, the third factor—Plaintiff's choice of forum—weighs strongly against transfer. "In the context of a motion to transfer venue, Plaintiff's choice of his home forum is to be given 'substantial deference.'" *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (citation omitted). The fourth and fifth factors—the parties' contacts with the forum and their relation to Plaintiff's claims—also weigh against transfer. As discussed above, RMI sought out Plaintiff's business and services in Arizona, and those are the same contacts giving rise to this action. The Court finds the remaining factors to be neutral. Defendant's argument as to the sixth factor—that litigating in this District would be more expensive because only Plaintiff resides in Arizona while all five Defendants reside in Florida—carries no weight given that four Defendants will be dismissed. Although the SAC refers to two Florida-based non-party entities, the Harrells are the only members of both of them, so it is not clear that any additional compulsory process would in fact be necessary. (Doc. 24 at 2). Finally, as to the ease of access to sources of proof, while it is true that RMI's operations, books, and records are located in Florida, it appears equally true that Plaintiff's are located in Arizona. Considering all relevant factors and circumstances, the Court finds that RMI has failed to establish that transfer of this action would be more convenient and in the interest of justice.

///

///

---

Agreement is also a relevant factor. But the forum selection clause is permissive, not mandatory. (Doc. 24 at 89); *see Meridian PO Fin. LLC v. OTR Tire Grp. Inc.*, 507 F. Supp. 3d 1148, 1159 (D. Ariz. 2020) ("A mandatory forum selection clause requires litigation to proceed in a particular jurisdiction, while a permissive forum selection clause simply bestows jurisdiction to that forum."). Although a mandatory forum selection clause is generally given controlling weight in a § 1404 analysis, "courts within the Ninth Circuit historically have" distinguished between mandatory and permissive clauses in the transfer context and continue to apply "the relevant private and public interest factors" in cases involving permissive forum selection clauses. *Ahtna Design-Build, Inc. v. Asphalt Surfacing, Inc.*, No. 3:21-cv-00228-JMK, 2022 WL 4080487, at *8 (D. Alaska Sept. 6, 2022).

## IV. CONCLUSION

In sum, Plaintiff's claims against Defendants RPP, Regener-Eyes, C. Randall Harrell, and Marissa Harrell will be dismissed for lack of personal jurisdiction. Plaintiff's claims against RMI, however, will proceed in this Court, as RMI has sufficient minimum contacts with Arizona such that jurisdiction is proper, and RMI has not shown that transfer to the Middle District of Florida would be more convenient and in the interest of justice. Accordingly,

**IT IS ORDERED:**

1. That RMI's Motion to Dismiss for Lack of Personal Jurisdiction; or, in the Alternative, Motion to Transfer (Doc. 26) is **denied**;
2. That the Non-RMI Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative Motion to Transfer Venue and Motion to Dismiss for Failure to State Cause of Action (Doc. 28) is **granted**;
3. That Plaintiff's claims against Regenerative Processing Plant LLC, Regener-Eyes LLC, C. Randall Harrell, and Marissa Harrell are **dismissed without prejudice** for lack of personal jurisdiction;
4. That the Clerk of Court shall terminate Regenerative Processing Plant LLC, Regener-Eyes LLC, C. Randall Harrell, and Marissa Harrell as parties to this action;
5. That Plaintiff's Motion to Strike (Doc. 44) is **denied**; and
6. That RMI shall have until **August 11, 2023** to answer the SAC.

Dated this 28th day of July, 2023.

Honorable Steven P. Logan
United States District Judge