**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Beougher,<br><br>            Plaintiff,<br><br>vs.<br><br>Regenerative Medicine International LLC, et al.,<br><br>           Defendants. | No. CV-22-01930-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Regenerative Medicine International, LLC's Motion to Stay or Dismiss the Action Under the Colorado River Doctrine, which has been fully briefed. (Docs. 51, 57, 58). The Court rules as follows.[1]

**I.  BACKGROUND**

Plaintiff Gerald Beougher is an Arizona resident. (Doc. 1 at 1). Defendant Regenerative Medicine International ("RMI") is a Florida LLC, with Marissa Harrell as its sole member and Dr. C. Randall Harrell as its Chief Executive Officer ("CEO"). (Doc. 24 at 1–2).

After discussions between Plaintiff and Dr. Harrell, on March 5, 2014, Plaintiff and RMI entered into two contracts. (Doc. 24 at 5–7). First, Plaintiff and RMI executed a Promissory Note in which Plaintiff agreed to loan $500,000 to RMI, with RMI making

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

quarterly interest payments until a final balloon payment due March 5, 2019. (Doc. 24 at 7). Plaintiff and RMI also executed an independent contractor agreement (the "Contractor Agreement") in which Plaintiff agreed to serve as RMI's Chief Operating Officer ("COO") and provide consulting services in exchange for $16,666.67 per month. (Doc. 4 at 7–8). The Contractor Agreement provided that Plaintiff would "be available as reasonably required through telephone conferences, at his offices in Scottsdale, Arizona and correspondence." (Doc. 24 at 8).

In the following months, pursuant to the Contractor Agreement, Plaintiff performed a variety of work for RMI in Arizona. (Doc. 24 at 10). Nonetheless, RMI never paid Plaintiff the full amount due to him under the Contractor Agreement, instead paying him only half as much monthly. (Doc. 24 at 9–10). In July 2015, a separate dispute arose between Plaintiff, Dr. Harrell, and RMI. (Doc. 24 at 12–13). The parties terminated the Contractor Agreement, and although RMI continued making some payments to Plaintiff in Arizona under the Promissory Note, Plaintiff alleges that he has not been paid in full. (Doc. 24 at 13).

On June 13, 2019, Plaintiff filed a Complaint against RMI only in Maricopa County Superior Court alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. 1 at 2). The case was soon stayed for more than two years pending RMI's bankruptcy proceedings in Florida. (Doc. 1 at 2). After the stay was lifted, on July 18, 2022, the Maricopa County Superior Court denied RMI's Rule 12(b)(2), (3), and (6) Motion to Dismiss or, in the Alternative, to Transfer Venue. (Doc. 35 at 58–59). On October 12, 2022, Plaintiff filed a First Amended Complaint in Superior Court naming additional defendants (the "Non-RMI Defendants").[2] (Doc. 1-2). On November 11, 2022, the Non-RMI Defendants removed the case to this Court. (Doc. 1).

---

[2] The Non-RMI Defendants are Dr. C. Randall Harrell and Marissa Harrell (collectively, "the Harrells"), a married couple residing in Florida; Regenerative Processing Plant ("RPP"), a Florida LLC, with Ms. Harrell as a manager and Dr. Harrell as a member; and Regener-Eyes, a Florida LLC, with the Harrells as members and/or managers. (Doc. 24 at 2).

2

On January 11, 2023, Plaintiff filed the operative Second Amended Complaint ("SAC") alleging eight counts: (1) breach of the Promissory Note against RMI and the Harrells; (2) breach of the Promissory Note's implied covenant of good faith and fair dealing against RMI and the Harrells; (3) breach of the Contractor Agreement against RMI and the Harrells; (4) breach of the Contractor Agreement's implied covenant of good faith and fair dealing against the Harrells; (5) negligent misrepresentation against RMI and the Harrells; (6) fraudulent inducement against RMI and the Harrells; (7) breach of fiduciary duty against the Harrells; and (8) unjust enrichment against RPP, RegenerEyes, and the Harrells. (Doc. 26). On March 17, 2023, Plaintiff voluntarily dismissed the breach of fiduciary duty claim. (Doc. 36).

On August 1, 2023, the Court held that it lacked personal jurisdiction over the Non-RMI Defendants and granted their motion to dismiss all claims against them. (Doc. 47 at 15). The Court, however, concluded that "RMI has sufficient minimum contacts with Arizona such that jurisdiction is proper, and RMI has not shown that transfer to the Middle District of Florida would be more convenient and in the interest of justice." (*Id.*). RMI answered the SAC on August 11, 2023. (Doc. 48).

On September 1, 2023, an Assignment for the Benefit of Creditors ("ABC") proceeding was filed by RMI in the Sixth Judicial Circuit Court in Pinellas County, Florida, Case No. 23-008254-CI (the "Florida Circuit Court"). (Doc. 51 at 2). At the ABC proceeding, Assignee Mark C. Healy was assigned the assets of RMI, RMI was identified as the assignor, and Plaintiff was identified as a creditor. (*Id.*). On October 3, 2023, RMI filed the pending Motion to Stay or Dismiss the Action Under the *Colorado River* Doctrine, which has been fully briefed. (Docs. 51, 57, 58).

**II.   LEGAL STANDARD**

A district court may exercise discretion to stay or dismiss proceedings in deference to a parallel contemporaneous suit. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983); *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).

"*Colorado River* deference to state court proceedings rests on 'considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir. 1990) (quoting *Colorado River*, 424 U.S. at 817). "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River*, 424 U.S. at 817. But "[b]ecause of 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them, only the clearest of justifications will warrant a dismissal' or stay." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021) (quoting *Colorado River*, 424 U.S. at 817–19) (internal citations and brackets omitted).

In determining whether judicial administration favors deference to a parallel state proceeding, the Court weighs the following eight factors: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *Id.* (citing *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011)). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (internal quotation and citation omitted).

### III.  DISCUSSION

1. <u>Jurisdiction Over the Property at Stake</u>

In weighing the *Colorado River* factors, the first is neutral. "This factor applies when both forums exercise jurisdiction over the same property, and addresses the concern 'that the parallel proceedings will result in inconsistent dispositions of [such property].'" *Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017) (quoting *Seneca Ins.*

*Co., Inc. v. Strange Land, Inc*., 862 F.3d 835, 840 (9th Cir. 2017)). Here, RMI agrees that "[t]his Court has not assumed jurisdiction over any property." (Doc. 51 at 7; Doc, 58 at 4). Instead, this case involves a dispute over money. *See American Int'l Underwriters*, 843 F.2d at 1258 ("money . . . is not the sort of tangible physical property referred to in *Colorado River*."). RMI argues that this factor weighs in favor of granting a stay because the Florida Circuit Court has assumed jurisdiction over RMI's assets which is tangible property. (Doc. 51 at 7). Because the instant case does not also involve tangible physical property, the two forums will not compete over the disposition of the same property. *See id.*

2. Inconvenience of the Federal Forum

Under the second factor, the Court considers whether the inconvenience of the federal forum warrants deference to the state court action. *See American Int'l Underwriters,* 843 F.2d at 1258. Neither party argues that the federal forum is inconvenient. (Doc. 51 at 7; Doc. 57 at 3). Therefore, this factor is also neutral.

3. Desirability of Avoiding Piecemeal Litigation

Under the third factor, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Id.* RMI argues that there is a real danger of piecemeal litigation (Doc. 51 at 7), however, the Court disagrees. This case involves an ordinary contract dispute whereas the ABC proceeding involves liquidating RMI's assets. Because the cases are resolving different issues, there is no concern that this case will result in duplicative efforts and inconsistent results. *See Travelers*, 914 F.2d at 1369. So, this factor is also neutral.

4. Order in Which Jurisdiction was Obtained

"[I]n considering the order in which jurisdiction was obtained" under the fourth factor, "it is important not only to determine whether the state or the federal complaint was filed first, but also to assess how much progress has been made in the two actions." *American Int'l Underwriters*, 843 F.2d at 1257 (citing *Cone*, 460 U.S. at 16). Here, there is no dispute that this action was filed prior to the ABC proceedings in the Florida Circuit

Court. (Doc. 51 at 8; Doc. 57 at 4). Plaintiff, however, argues that this factor weighs heavily against abstention because this action has been ongoing for several years. (Doc. 57 at 5). While Plaintiff's argument is true, there has been no significant progress on the merits, therefore, this factor is generally neutral.

5. Applicable Law

The fifth factor is also neutral. Although "the presence of federal-law issues must always be a major consideration weighing against surrender," the "presence of state-law issues may weigh in favor of that surrender" only "in some *rare* circumstances." *Cone*, 460 U.S. at 26 (emphasis added). Since this case involves a routine state law issue—breach of contract—which the Court is fully capable of deciding, there are no such "rare circumstances" here. *See Travelers*, 914 F.2d at 1370.

6. Adequacy of the State Court Proceedings to Protect Rights

Under the sixth factor, the Court considers whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Cone,* 460 U.S. at 28. In this context, the Court evaluates whether Plaintiff's breach of contract claims can be completely and promptly resolved at the ABC proceeding. The Court finds that it cannot. Since the sole purpose of the ABC proceeding is to liquidate RMI's assets and not to resolve Plaintiff's contractual claims, this factor weighs heavily against granting a stay or dismissal.

7. Forum Shopping

The seventh factor, the desirability to avoid forum shopping, considers whether "the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers*, 914 F.2d at 1371 (citing *Nakash*, 882 F.2d at 1417). Here, there is not dispute that Plaintiff is not attempting to forum shop. (Doc. 57 at 6; Doc. 51 at 9). Accordingly, this factor is neutral.

///

///

///

8. Parallel Actions

Lastly, the eighth factor weighs against granting a stay or dismissal. The Court considers whether the state court proceeding "sufficiently parallels" the federal proceeding. *R.R. St. & Co. Inc.*, 656 F.3d at 982. This "standard is not one of exact parallelism, but looks to whether the two proceedings are 'substantially similar.'" *Nakash*, 882 F.2d at 1416. RMI argues that the cases are similar because both proceedings involve the same parties. (Doc. 51 at 10). RMI also suggests that the resolution of the ABC proceeding would render the instant case unnecessary. (*Id.*). Plaintiff, on the other hand, argues that "the purpose of [the ABC proceeding] is to determine whether [Plaintiff] *has* a claim." (Doc. 57 at 7 (emphasis in original)). The Court agrees. Because the ABC proceeding will not address or resolve Plaintiff's contractual claims, this factor does not tip in favor of granting a stay or dismissal.

**IV.   CONCLUSION**

Weighing the factors as a whole, the Court concludes that there is no showing of the requisite exceptional circumstances to justify a stay or dismissal. Accordingly,

**IT IS ORDERED:**

1. That the Motion to Stay or Dismiss the Action Under the Colorado River Doctrine (Doc. 51) is **denied**;

2. That pursuant to the Court's Order (Doc. 59), Defendant Regenerative Medicine International, LLC shall file a Response to the Motion for Partial Judgment on the Pleadings (Doc. 54) by **March 25, 2024**.

Dated this 15th day of March, 2024.

Honorable Steven P. Logan
United States District Judge